INTER–CITY GAS CORPORATION, a Manitoba corporation, Appellant,

v.

BOISE CASCADE CORPORATION, a Delaware corporation, Appellee.

INTER–CITY GAS CORPORATION, a Manitoba corporation, Appellee,

v.

BOISE CASCADE CORPORATION, a Delaware corporation, Appellant.

Nos. 87–5063, 87–5084.

United States Court of Appeals, Eighth Circuit.

Submitted Sept. 3, 1987.

Decided April 27, 1988.

---

Samuel Hanson, Minneapolis, Minn., for appellant.

Darron C. Knutson, St. Paul, Minn., for appellee.

Before McMILLIAN, Circuit Judge, HENLEY, Senior Circuit Judge, and FAGG, Circuit Judge.

FAGG, Circuit Judge.

This controversy involves a contract dispute between a natural gas supplier, Inter–City Gas Corporation (Inter–City), and a manufacturing company, Boise Cascade Corporation (Boise), over various payments and charges for natural gas. Following a hearing, an arbitrator awarded Inter–City damages on its claim that Boise was undercharged because of an error in measuring the quantity of natural gas sold. The arbitrator also granted an award to Boise on its counterclaim for a refund of overcharges for gas purchased under the contract. Both awards were in excess of $300,000, but the net result left Inter–City indebted to Boise for approximately $26,-000.

Each party petitioned the district court to confirm the arbitration award in its favor and to vacate the adverse award. *See* 9 U.S.C. §§ 9–10. The district court confirmed both awards. Inter–City now appeals to this court and Boise cross-appeals. We reverse on Inter–City's appeal, affirm on Boise's cross-appeal, and remand to the district court.

In the paragraphs that follow, we set out the facts necessary to understand the issues raised on appeal. Boise is an American company that produces wood pulp and paper products. Under a contract signed in 1969, Inter–City, a Canadian company, agreed to supply Boise with natural gas to operate Boise's plant at International Falls, Minnesota. Subsidiaries of Inter–City then built a pipeline to transport the gas from Canada to the United States. As constructed, the pipeline first runs from Canada into western Minnesota, then crosses back into Canada, and finally ends just south of the Canadian border near International Falls, Minnesota. Inter–City Minnesota Pipelines, Ltd. (Minnesota Pipelines), a wholly-owned subsidiary of Inter–City, owns the portions of the pipeline in the United States.

The Canadian National Energy Board (NEB) issued two licenses that approved the export of natural gas to the United States and set the price of gas at both export points on the border. License GL–

28 authorized the export of gas to the United States at the first point, located near western Minnesota. License GL–29 authorized the export of gas at the second point, located near International Falls, Minnesota.

Exercising its authority under the Natural Gas Act (Act), 15 U.S.C. §§ 717–717w, the Federal Power Commission (FPC) approved the importation of gas to this country, *see Inter–City Minn. Pipelines, Ltd.,* 44 F.P.C. 262, 264 (1970). The FPC also determined that Minnesota Pipelines was subject to its jurisdiction and all of the requirements of the Act. *See Inter–City Minn. Pipelines, Ltd.,* 44 F.P.C. 1611, 1612–13 (1970). In compliance with the Act, Minnesota Pipelines has filed with the FPC, and later with the Federal Energy Regulatory Commission (FERC), proposed rates to be charged to its gas customers. *See* 15 U.S.C. § 717c.

Under the established framework, Minnesota Pipelines purchases the natural gas at the Canadian border under either of the export licenses and, in turn, sells the gas to its customers in Minnesota. Inter–City, which is Minnesota Pipelines' chief customer, purchases the gas at International Falls at the wholesale rate filed with the FERC. Inter–City then sells the gas to Boise at the retail rate filed with the Minnesota Public Utilities Commission. That Commission has accepted the terms of Inter–City's natural gas contract with Boise as the retail rate, and state regulation of the retail sale is not at issue in this appeal.

Minnesota Pipelines bases the rate it files with the FERC on the cost of purchasing gas at the Canadian border. The border prices, however, have not always been the same under both Canadian export licenses. The NEB has often set a higher border price under license GL–28 than license GL–29. Nevertheless, until November 1, 1982, Minnesota Pipelines did not segregate these differing border costs when it computed the rate that it filed with the FERC. Instead, Minnesota Pipelines used a "rolled-in" method of determining the cost component of its FERC rate, that is, the two border prices were averaged in

determining the rate to be filed with the FERC. The FERC rate was the same regardless of the point where the gas was imported.

Inter–City has paid the FERC rate when purchasing gas from Minnesota Pipelines and has recovered this cost by including the FERC rate in the price Inter–City charged for gas sold to Boise. In 1981 Boise complained about the use of the rolled-in rate. Boise believed that under the contract it should benefit from the lower border price set by license GL–29, which covered the gas coming into the United States at International Falls. Consequently, Minnesota Pipelines petitioned the FERC to permit a change in the method of rate computation from an averaged rate to a zoned rate. The FERC approved this change, *see Inter–City Minn. Pipelines, Ltd.,* 25 F.E.R.C. ¶ 61,021 (1983), and since November 1, 1982, the FERC rate filed by Minnesota Pipelines has been based on a direct allocation of its cost at the respective purchase points on the border.

Boise later sued Inter–City, asserting Inter-City had breached the gas contract by including the rolled-in rate rather than the lower GL–29 border price in the retail rate. Boise sought to recover the claimed overcharge for the period from February 17, 1980, through October 31, 1982. At the same time Inter–City made a demand for arbitration as provided in the contract. Inter–City claimed Boise had been undercharged due to an error in measuring the quantity sold from January 25, 1982, to July 1, 1982. The district court dismissed Boise's complaint, and the parties proceeded to arbitration on both their respective claims.

After a hearing, the arbitrator awarded damages to both parties on their claims, but did not prepare written findings. Inter–City and Boise then petitioned the district court for relief, and the court confirmed both arbitration awards. The parties now appeal to this court. Inter–City and Boise each seek to set aside the award that is favorable to the other party.

I. Inter–City Appeal: The Award to Boise

The dispute over whether Inter–City should have based its retail rate on the GL–29 border price rather than the rolled-in rate turns on a specific provision in the parties' contract. Article X of the contract governs the rates Inter–City may charge Boise and permits Inter–City to pass its wholesale cost on to Boise. Although Article X has been amended twice since 1969, the amendments have been minor.

The time period in question here is covered partially by the 1975 amendment and partially by the 1980 amendment. Because the relevant language is the same or similar, we quote only the 1980 version of Article X. It provides:

> The *rates* set forth * * * *are based on the cost of gas to [Inter–City] from* * * * *Minnesota Pipelines* * * * *for delivery in the United States* * * *. Such rates will be subject to an increase or decrease in amount equal to the amount of any increase or decrease in the rates* * * * *that [Inter–City] pays* * * * *Minnesota Pipelines* * * * *for gas delivered in the United States* * * * *which may be approved, ordered or set by* any valid law, *order,* rule or regulation *of any* * * * *regulatory authority* now or hereafter *having jurisdiction.*

(Emphasis added.)

Both parties agree this language allows Inter–City to recover from Boise some amount in wholesale cost paid to Minnesota Pipelines. The issue is whether Inter–City may recover the FERC rate, which in this case is Inter–City's entire wholesale cost. Boise asserts, and the arbitrator apparently concluded, that Inter–City could recover only the lower GL–29 border cost. In response, Inter–City vigorously argues the FERC had jurisdiction over Minnesota Pipelines and, therefore, the FERC rate is the wholesale cost that must be passed through to Boise under Article X. Inter–City contends the arbitrator exceeded his authority by applying a rate different than the FERC rate Inter–City paid to Minnesota Pipelines. *See* 9 U.S.C. § 10(d).

■ Initially, we recognize the strong federal policy favoring arbitration. *See*

*Shearson/American Express, Inc. v. McMahon,* —— U.S. ——, 107 S.Ct. 2332, 2337, 96 L.Ed.2d 185 (1987). In accordance with that policy, judicial review of arbitration awards is restricted, *see Stroh Container Co. v. Delphi Indus., Inc.,* 783 F.2d 743, 751 (8th Cir.), *cert. denied,* 476 U.S. 1141, 106 S.Ct. 2249, 90 L.Ed.2d 695 (1986), and the courts will not review the merits of those awards, *Coast Trading Co. v. Pacific Molasses Co.,* 681 F.2d 1195, 1198 (9th Cir. 1982); *see United Food & Commercial Workers, Local No. 222 v. Iowa Beef Processors, Inc.,* 683 F.2d 283, 285 (8th Cir.), *cert. denied,* 459 U.S. 1088, 103 S.Ct. 571, 74 L.Ed.2d 933 (1982) (labor arbitration); *see also* 9 U.S.C. § 10. Thus, contract interpretation is left to the arbitrator. *See United Paperworkers Int'l Union v. Misco, Inc.,* —— U.S. ——, 108 S.Ct. 364, 370, 98 L.Ed.2d 267 (1987) (labor arbitration); *United Paperworkers Int'l Union v. Georgia Pac. Corp.,* 841 F.2d 243, 244–45 (8th Cir.1988) (labor arbitration). We will not set aside the arbitrator's award even though we might have interpreted the contract differently. *See United Paperworkers Int'l Union,* 108 S.Ct. at 371; *Stroh Container Co.,* 783 F.2d at 751.

■ The arbitrator's authority, however, is not unlimited. Although the arbitrator may interpret ambiguous language, the arbitrator may not disregard or modify unambiguous contract provisions. *Sears, Roebuck & Co. v. Teamsters Local Union No. 243,* 683 F.2d 154, 155 (6th Cir.1982), *cert. denied,* 460 U.S. 1023, 103 S.Ct. 1274, 75 L.Ed.2d 495 (1983) (labor arbitration); *accord Hoteles Condado Beach v. Union De Tronquistas Local 901,* 763 F.2d 34, 41 (1st Cir.1985) (labor arbitration). As the Supreme Court has stated in the labor context, "[t]he arbitrator may not ignore the plain language of the contract." *United Paperworkers Int'l Union,* 108 S.Ct. at 371. More specifically, if the arbitrator "interprets unambiguous language in any way different from its plain meaning, [the arbitrator] amends or alters the agreement and acts without authority." *District No. 72 & Local Lodge 1127, Int'l Assoc. of Mach. & Aerospace Workers v. Teter Tool*

& Die, Inc., 630 F.Supp. 732, 736 (N.D.Ind. 1986) (labor arbitration). Thus, we will review the arbitration award to ensure it is grounded on the parties' contract. *See Coast Trading Co.*, 681 F.2d at 1198.

■ The contract language before us here is plain and unambiguous, and the arbitrator disregarded it. Article X clearly states the retail rate between Inter–City and Boise is "based on the cost of gas to [Inter–City] from * * * Minnesota Pipelines." The contract provision does not mention the GL–29 border price. Article X provides no basis for the arbitrator to ignore the wholesale cost, which was the FERC rate, paid by Inter–City to Minnesota Pipelines.

In addition, the contract indicates the cost to Boise will be adjusted by any change in the wholesale rate that Inter–City pays to Minnesota Pipelines when that change is "approved, ordered or set by any * * * regulatory authority * * * having jurisdiction." Under the plain language, the retail rate charged to Boise must be increased in line with the FERC rate if the FERC had jurisdiction to set the wholesale rate. In applying the lower GL–29 border price rather than the FERC rate, the arbitrator had to reject the FERC's jurisdiction to set the wholesale rate. We now turn to the question of the FERC's jurisdiction.

In 1970, the FPC found that Minnesota Pipelines was a "natural gas company" as defined by the Natural Gas Act, *see* 15 U.S.C. § 717a(6), and subject to the requirements of the Act. *See Inter–City Minn. Pipelines, Ltd.*, 44 F.P.C. 1611, 1612–13 (1970). During the period relevant here, Minnesota Pipelines was required under the Act to file its proposed rate with the FERC. Minnesota Pipelines did so, and the filed rate became the only authorized rate Minnesota Pipelines could charge. *See Arkansas La. Gas Co. v. Hall*, 453 U.S. 571, 577–78, 581, 101 S.Ct. 2925, 2930–31, 2932, 69 L.Ed.2d 856 (1981).

Later, in a 1984 order, the FERC recognized that Minnesota Pipelines was engaged in foreign, rather than interstate, commerce and therefore was not a natural gas company under the Act. *See Inter–*

*City Minn. Pipelines, Ltd.*, 29 F.E.R.C. ¶ 61,105, at 61,204 to 61,205 (1984). The FERC, however, chose to exercise its discretionary jurisdiction over Minnesota Pipelines and indicated that Minnesota Pipelines must continue to comply with all the requirements of the Act. *Id.* at 61,205 to 61,206. The FERC then reaffirmed under its discretionary jurisdiction all previous orders involving Minnesota Pipelines. *Id.* at 61,206. The FERC specifically stated that by doing so it had "preserve[d] the status quo." *Id.*

■ For our purposes here, the FERC had jurisdiction over the wholesale rate charged by Minnesota Pipelines to Inter–City. Boise had the opportunity to attack the FERC's jurisdiction in proceedings before that agency, and neither Boise nor the arbitrator may now question the final decisions of the FERC.

Before a rate change could go into effect, Minnesota Pipelines had to file the proposed rate with the FERC and also had to give public notice. *See* 15 U.S.C. § 717c; 18 C.F.R. § 154.28 (1981). An interested person, here an end-use customer such as Boise, could then move to intervene as a party in any proceeding before the FERC. *See* 15 U.S.C. § 717n(a); 18 C.F.R. § 1.8 (1981) (FERC's procedural rules were transferred to Part 385 of Title 18 in late 1982, *see* 47 Fed.Reg. 19,014 (1982)); *see also* § 385.214 (1987). The FERC has rarely denied a person's petition or motion to intervene. *See* 47 Fed.Reg. 19,017 to 19,- 018 (1982). After the FERC made a final decision, 18 C.F.R. §§ 1.30(d), 1.34(c) (1981); *see also id.* §§ 385.708(d), 385.712, 385.- 713(f) (1987), a party could seek judicial review in the court of appeals if the party filed a petition with that court within the appropriate time period, 15 U.S.C. § 717r(b). Otherwise the FERC's decision was binding. *Cf. City of Tacoma v. Taxpayers*, 357 U.S. 320, 335–36, 78 S.Ct. 1209, 1218–19, 2 L.Ed.2d 1345 (1958).

Boise did not attempt to intervene in the FERC proceedings that resulted in rate orders for the relevant period. Those FERC decisions became final, and the FERC's jurisdiction cannot be collaterally

attacked. *See Adams v. Bell*, 711 F.2d 161, 168–70 (D.C.Cir.1983) (en banc), *cert. denied*, 465 U.S. 1021, 104 S.Ct. 1272, 79 L.Ed.2d 678 (1984). *Compare National Ass'n of Regulatory Utility Comm'rs v. FERC*, 823 F.2d 1377, 1381–82 (10th Cir. 1987). Boise and Inter–City are bound by those unchallenged, final agency decisions as they relate to the gas contract. Similarly, the arbitrator is also bound by final FERC decisions that were previously unchallenged by the parties involved here. *Cf. International Union, United Auto., Aerospace & Agric. Implement Workers & Its Local 1519 v. Rockwell Int'l Corp.*, 619 F.2d 580, 583 (6th Cir.1980) (NLRB work dispute determination takes precedence over contrary arbitrator's award).

Under the plain language of the contract, Inter–City could adjust its price to Boise in line with a change in the wholesale price it paid to Minnesota Pipelines, if that change was approved by a regulatory authority having jurisdiction. Because the FERC's jurisdiction had been established by binding orders, the wholesale price paid by Inter–City was the FERC rate then in place. The arbitrator rejected the FERC rate, and in doing so, he ignored the plain language of the contract. Thus, he exceeded his authority under the contract, and we cannot uphold the award to Boise. *See* 9 U.S.C. § 10(d).

## II. Boise's Cross–Appeal: The Award to Inter–City

The arbitrator granted Inter–City an award for gas it sold to Boise but for which Inter–City failed to charge. Inter–City has maintained the failure resulted because of a measuring error from January 25, 1982, to July 1, 1982. In its cross-appeal, Boise seeks to set aside this award.

Boise contends Inter–City failed to establish the beginning and ending dates of the time period in which the measurement error occurred. Because of this claimed failure, Boise maintains that under the contract Inter–City can recover for only a sixteen-day period. Thus, according to Boise, the arbitrator exceeded his authority in granting Inter–City an award for the full amount claimed.

Whether Inter–City proved the time period over which the measurement error occurred is a question of fact for the arbitrator. Here, the arbitrator apparently found Inter–City established the relevant time period, and the record reflects that during arbitration Inter–City did introduce evidence of when the mismetering occurred. Further, under our limited standard of review, we will not set aside the arbitrator's award "simply because * * * the arbitrator[] erred * * * in determining the facts." *Stroh Container Co. v. Delphi Indus., Inc.*, 783 F.2d 743, 751 (8th Cir.), *cert. denied*, 476 U.S. 1141, 106 S.Ct. 2249, 90 L.Ed.2d 695 (1986); *see United Paperworkers Int'l Union v. Misco, Inc.*, —— U.S. ——, 108 S.Ct. 364, 370, 98 L.Ed.2d 286 (1987) (labor arbitration). The award to Inter–City must stand.

## III. Boise's Other Contentions

We have considered all Boise's arguments on both the appeal and cross-appeal. We reject them and conclude they do not warrant further discussion here.

## IV. Conclusion

We conclude the arbitrator's award to Boise exceeded his authority, and the award cannot be upheld. The award to Inter–City, however, was within the arbitrator's authority and must stand. Accordingly, we reverse the district court's order to the extent it upheld the award to Boise, but affirm the court's order to the extent it upheld the award to Inter–City. We remand to the district court to enter an order vacating the award to Boise.

Affirmed in part, reversed in part, and remanded.