**OSCEOLA COUNTY RURAL WATER SYSTEM, INC., Appellee,**

v.

**SUBSURFCO, INC., Appellant.**

**Rode Construction Company and Sheesley Plumbing and Heating Co., Inc.**

**OSCEOLA COUNTY RURAL WATER SYSTEM, INC., Appellee,**

v.

**SUBSURFCO, INC. Rode Construction Company and Sheesley Plumbing and Heating Co., Inc., Appellants.**

**Nos. 89–1857, 89–1899.**

United States Court of Appeals, Eighth Circuit.

Submitted Feb. 16, 1990.

Decided Sept. 20, 1990.

Rehearing and Rehearing En Banc Denied Oct. 25, 1990.

Philip L. Bruner, Minneapolis, Minn., for appellant.

Jack G. Marcil, Fargo, N.D., for appellee.

Before WOLLMAN and MAGILL, Circuit Judges, and WATERS,[*] District Judge.

WOLLMAN, Circuit Judge.

Subsurfco, Inc. (Subsurfco) and its subcontractors, Rode Construction Company and Sheesley Plumbing and Heating Co., Inc., appeal from the district court's order setting aside an arbitration award. We reverse.

## I. Background

Osceola County Rural Water System, Inc. (Osceola) is a nonprofit corporation organized to build and operate a rural water system. Subsurfco is a Nebraska corporation engaged in the construction business. In 1981, Osceola entered into a $7.2 million contract with Subsurfco for the construction of a 680–mile rural water distribution system in northwest Iowa. Subsurfco in turn entered into contracts with the subcontractors for the construction of the water line.

Work commenced on the water line in April 1981. The contract provided that the primary method of installing the pipe was by use of the open trench method, utilizing equipment that would dig a trench to the desired depth and to a width sufficient to allow personnel to lay the pipe at the bottom of the trench. Subsurfco soon experienced difficulties with the open trench method when it encountered substantial areas of unstable soils, widespread presence of boulders, and high ground water levels, all of which made it impracticable or impossible to continue with the open trench pro-

---

[*] The HONORABLE H. FRANKLIN WATERS, Chief Judge, United States District Court for the Western District of Arkansas, sitting by designation.

cedure. Work was slowed, and by mid-June 1981 Subsurfco was 78 miles behind schedule. To overcome these installation problems, Subsurfco, with Osceola's permission, began using the "plow-in" method of laying the pipe, utilizing a large-shanked machine drawn by several crawler tractors. This procedure required the pipe sections to be joined by the use of glue rather than by rubber gaskets, as was the case with the pipe laid by the open trench method.

The majority of the construction was completed in 1981, and the system was put into operation by agreement of the parties in July and August of 1982. Thereafter, Subsurfco continued to work on the system. In December 1982, the parties executed Change Order 13, under which liquidated damages in the amount of $100,000 were assessed against Subsurfco and the contract price reduced accordingly.

On September 6, 1983, Osceola terminated the contract for Subsurfco's failure to complete the project. In April 1985, Osceola brought a lawsuit against Subsurfco and its subcontractors in Iowa state court. In May 1985, Subsurfco filed a demand for arbitration under the arbitration clause of the contract, claiming some $3 million in damages against Osceola. In turn, Osceola filed a claim for approximately $7 million against Subsurfco and the subcontractors as damages resulting from defective workmanship, faulty materials, untested line, and excessive water loss.

Osceola's principal complaints about the work done by Subsurfco and the subcontractors concerned the excessive leakage in the system (approximately 40% of the water pumped into the system) resulting from the allegedly faulty gluing of the pipe joints. Subsurfco countered these allegations by arguing that the problems it had experienced in installing the pipe were the result of Osceola's inadequate investigation of the soil and water conditions that would be encountered and its inadequate design of a pipeline system to meet such conditions.

The arbitrators found that Subsurfco had substantially completed its work at the time Change Order 13 was executed. The arbitrators also found, among other things, that the pipeline had been installed in accordance with Osceola's design specifications and that Osceola had assumed the responsibility for and the risk of the results of those design specifications, including the risk of the excessive water loss condition that resulted. The arbitrators concluded that Subsurfco was entitled to a net claim of $286,655. This amount represented the balance of the unpaid contract price of $344,619, plus interest on excessive retainage withholdings in the amount of $79,636, less set-offs to Osceola in the amount of $137,600.

Osceola brought an action in Iowa state court to set aside the arbitrators' award. Following removal of the case to federal court, the district court vacated the award. The district court found that the arbitrators had ignored the plain language of the contract and exceeded their powers when they ignored key provisions in the contract and Iowa case law. The district court also found that the award violated public policy because the arbitrators ignored the testimony of two of Subsurfco's former employees that they had been ordered by Subsurfco's project engineer to falsify the results of pressure testing on sections of the water line.

## II. Discussion

The Federal Arbitration Act sets forth the grounds for vacating arbitration awards. An award may be set aside:

(a) Where the award was procured by corruption, fraud, or undue means.

(b) Where there was evident partiality or corruption in the arbitrators, or either of them.

(c) Where the arbitrators were guilty of misconduct in refusing to postpone the hearing, upon sufficient cause shown, or in refusing to hear evidence pertinent and material to the controversy; or of any other misbehavior by which the rights of any party have been prejudiced.

(d) Where the arbitrators exceeded their powers or so imperfectly executed them that a mutual, final and definite

award upon the subject matter submitted was not made.

9 U.S.C. § 10. In addition, a court may set aside an award if it fails to draw its essence from the contract. *George A. Hormel & Co. v. United Food & Commercial Workers, Local 9,* 879 F.2d 347, 349 (8th Cir.1989) (citing *United Steelworkers v. Enterprise Wheel & Car Corp.,* 363 U.S. 593, 597, 80 S.Ct. 1358, 1361, 4 L.Ed.2d 1424 (1960)).

The Supreme Court has repeatedly stated that the review of arbitration decisions is limited. "[A]s long as the arbitrator is even arguably construing or applying the contract and acting within the scope of his authority, that a court is convinced he committed serious error does not suffice to overturn his decision." *United Paper Workers Int'l Union, AFL–CIO v. Misco, Inc.,* 484 U.S. 29, 38, 108 S.Ct. 364, 371, 98 L.Ed.2d 286 (1987). It is the arbitrator's construction and application of the contract for which the parties bargained. The courts have "no business overruling [an arbitrator] because their interpretation of the contract is different from his." *United Steelworkers,* 363 U.S. at 599, 80 S.Ct. at 1362.

■ Likewise, our decisions have recognized that judicial review of arbitration awards is narrow in scope. *Stroh Container Co. v. Delphi Indus., Inc.,* 783 F.2d 743, 751 (8th Cir.1986), *cert. denied,* 476 U.S. 1141, 106 S.Ct. 2249, 90 L.Ed.2d 695 (1986). Accordingly, courts are not to review the merits of arbitration awards. *Inter–City Gas Corp. v. Boise Cascade Corp.,* 845 F.2d 184, 187 (8th Cir.1988). It is for the arbitrator to interpret the contract, and we "will not set aside the arbitrator's award even though we might have interpreted the contract differently." *Id.* Although the arbitrator's authority is broad, it is not unlimited. The arbitrator "may interpret ambiguous language," but he may not, however, "disregard or modify unambiguous contract provisions." *Id.* If the arbitrator " 'interprets unambiguous language in any way different from its plain meaning, [the arbitrator] amends or alters the agreement and acts without au-

thority.' " *Id.* 845 F.2d at 187 (citation omitted).

■ The arbitrators heard testimony from some twenty witnesses over a six-week period, receiving in evidence several thousand documents. Each of the arbitrators had lengthy experience in the construction industry. No one has suggested that the arbitrators were guilty of partiality, corruption, misconduct, or other misbehavior. Without discussing in greater detail either the evidence presented or the contract terms in question, we conclude that the district court erred in substituting its own interpretation of the contract for that of the arbitrators. Likewise, we conclude that the district court erred in holding that the award violated public policy because it in effect rewarded Subsurfco for falsifying the results of pressure testing. As the district court recognized, arbitrators are not required to elaborate on the reasoning in support of an award. There is nothing in the record to suggest that the arbitrators accepted as true the testimony of the former employees (both of whom were employed by Osceola at the time of their testimony before the arbitrators) regarding the falsification of test results. The arbitrators brought their collective experience to bear on the extensive testimony and voluminous documentary evidence received and then entered an award in accordance with their understanding of the meaning of the contract provisions. That was their prerogative and duty, and we see no justification for setting aside their award.

The district court's order is reversed, and the case is remanded to the district court with directions that the arbitration award be reinstated.