_____

No. 95-3424
_____

Excel Corporation,                  *
                                    *
          Appellee,                 *
                                    *   Appeal from the United States
     v.                             *   District Court for the
                                    *   Southern District of Iowa.
United Food and Commercial          *
Workers International Union,         *
Local 431,                          *
                                    *
          Appellant.                *

_____

                Submitted:  March 15, 1996

                   Filed:  December 26, 1996
_____

Before McMILLIAN, BEAM, and HANSEN, Circuit Judges.
_____

BEAM, Circuit Judge.


     The United Food and Commercial Workers International Union,
Local 431 (Union) appeals the district court's[1] order vacating a
labor arbitration award in which the arbitrator concluded that
Excel Corporation (Excel) violated terms of the collective
bargaining agreement (CBA) by terminating employees who were
injured on the job after their twelve-month medical leave expired.
Because the district court correctly concluded that the arbitrator
failed to apply the plain language of the CBA and, thus, the award
does not draw its essence from the CBA, we affirm the district
court's vacation of the award.

_____

     [1]The Honorable Ronald E. Longstaff, United States District
Judge for the Southern District of Iowa.

## I.     BACKGROUND

The undisputed facts of this case, which we summarize below, were set out in the arbitrator's award.  In 1987, Excel purchased a pork processing plant in Beardstown, Illinois, from Oscar Mayer. After acquiring the plant, Excel and the Union--which represents just under 1500 production workers--engaged in collective bargaining over the terms of a new contract to replace the one previously existing between the Union and Oscar Mayer.  Under that previous contract, an employee's seniority was terminated if that employee had been absent from work continuously for more than two years due to sickness or accident.  During negotiations for the new contract, Excel proposed language under which an employee would lose seniority if absent from work for any reason for a period of six months.  The Union countered with language providing for longer leaves of absence (e.g., one or two years).  Furthermore, the Union's proposal excluded from the scope of the seniority provision employees who were injured on the job and/or who were receiving workers' compensation.

On January 29, 1988, the full bargaining committee met and the parties agreed on the seniority provision now found in the CBA (art. XIII, § 7), which provides in pertinent part:

> An employee shall lose his seniority for the following reasons:
>
> A.     Voluntary quitting.
> B.     Discharge for proper cause.
> C.     Absence for two (2) consecutive days without notification to the employer.
> D.     Overstaying a leave of absence without justifiable cause.
> E.     Absent from work for any reason for [a] period of twelve (12) months.
>
> . . . .

Joint App. at 22-23 (hereafter referred to as "the seniority provision"). In July 1988, the parties executed the final CBA, which contains this seniority provision.

Between 1990 and 1992, Excel terminated approximately ten employees pursuant to section 7(E) of the seniority provision in the CBA. The circumstances surrounding these terminations are unclear from the record. Excel's Human Resources Manager, however, testified that Excel terminated employees for non-work related injuries but he did not have specific information about these terminations. Throughout this period, Excel assigned some injured workers to light-duty jobs. Although these light-duty jobs paid less than an employee's regular wage, the employee continued to receive a steady income and health insurance, neither of which were provided while on a medical leave of absence.

In October 1991, after receiving complaints from some Union members, Excel unilaterally announced to the Union and affected employees that from that time forward it would place injured employees on medical leaves of absence. No grievance was filed at that time. According to the Union, no grievance was filed because Excel did not tell the Union or affected employees that they could be terminated if their leave of absence exceeded one year.

Under this new policy, Excel would occasionally offer plant tours to medically restricted employees to see if they could perform any job within their medical restrictions. Excel recalled about three employees on medical leaves of absence once their restrictions changed. During this time neither the Union nor the employees on medical leave asked Excel to make accommodations for them. In October 1992, however, Excel terminated approximately eight employees who had medical restrictions which caused them to work in non-bargaining unit jobs. One such employee filed a grievance on October 12, 1992, alleging that the seniority provision (art. XIII, § 7) of the CBA was not intended to terminate

employees who were laid off due to work-related injuries. Subsequently, about twelve employees joined in the grievance. The parties were unable to resolve the grievance and proceeded to arbitration. In total, by the time of the arbitration hearing, Excel terminated approximately fifty employees who were injured on the job and on medical leaves of absence.

At the arbitration hearing, the Union argued, among other things, that Excel's termination policy violated the true meaning of the CBA's seniority provision. The Union also asserted that the seniority provision must be read in harmony with the "for cause" provisions contained in the CBA. Finally, the Union contended that "loss of seniority" did not mean termination. Excel argued that the plain language of the seniority provision in the CBA gave it the right to terminate an employee for any reason after an absence of one year.

Although the arbitrator determined that the "loss of seniority" language in the seniority provision meant termination, the arbitrator concluded that "the Company has violated Article III and Article XIII, Section 7E, of the contract by terminating such employees after their twelve-month medical leaves of absence expired." Joint App. at 61. The arbitrator reasoned that while the seniority provision, standing alone, supported Excel's position, it must be analyzed by considering it alongside article III, which states:

> The Company and the Union agree that they will not discriminate against any employee or applicant for employment because of race, sex, color, creed, nationality, age, religion, veteran status, handicaps, or national origin.

Id. at 48 (hereafter referred to as "the anti-discrimination clause"). Thus, the arbitrator deemed it necessary to consider parole evidence to discern the intent of the parties as to the

-4-

interplay between the seniority provision and the anti-discrimination clause.  The arbitrator determined that there was no evidence in the record that the Union ever expressly dropped its insistence that employees injured on the job be excluded from the scope of the seniority provision.  Moreover, the arbitrator found that Excel's silence--i.e., failure to respond to the Union's reiteration of its position during negotiations--constituted a valid acceptance of the Union's position.  Therefore, the arbitrator awarded judgment to the Union.[2]

Excel filed the present lawsuit in federal district court requesting vacation of the arbitrator's award.  The district court granted Excel's motion for summary judgment and vacated the arbitrator's award for the Union.  The district court concluded that the arbitrator disregarded the unambiguous language of the contract and, thus, the award did not draw its essence from the CBA.

The Union appeals the district court's order, contending that the district court erred because the arbitrator noted an ambiguity in the contract and properly looked to the parties' negotiations to resolve such ambiguity.  The Union alternatively contends that the arbitrator could have sustained the grievance on other theories and thus the case should be remanded to the arbitrator to consider those theories.  Excel asserts that the arbitrator erroneously ignored the plain language of the CBA and instead created an ambiguity where none existed.

---

[2]The arbitrator did not discuss the Union's alternative argument that Excel also violated the "for cause" language in the CBA when it discharged employees under the seniority provision.

## II.  DISCUSSION

Excel filed the present lawsuit pursuant to section 301 of the Labor Management Relations Act.  See 29 U.S.C. § 185.  Under this section, we review an arbitrator's award to determine whether:  (1) the parties agreed to arbitrate; and (2) the arbitrator had the power to make the award.  See, e.g., Keebler Co. v. Milk Drivers and Dairy Employees Union, Local No. 471, 80 F.3d 284, 287 (8th Cir. 1996).[3]  Because the parties do not dispute that the grievance was subject to arbitration, we focus on whether the arbitrator had the power to enter the award.

A district court's order vacating an arbitration award is subject to de novo review on questions of law and clearly erroneous review on findings of fact.  See First Options of Chicago, Inc. v. Kaplan, 115 S. Ct. 1920, 1926 (1995).  It is well established that a labor arbitration award is subject to a deferential standard of review and should be enforced "so long as it draws its essence from the collective bargaining agreement."  United Steelworkers v. Enterprise Wheel & Car Corp., 363 U.S. 593, 597 (1960).  A reviewing court cannot overturn an arbitrator's award even if the court is convinced the arbitrator committed serious error so long as the arbitrator was arguably construing or applying the contract. United Paperworkers Int'l Union, AFL-CIO v. Misco, Inc., 484 U.S. 29, 38 (1987).  We may, however, vacate an arbitration award "when the award does not derive its essence from the collective bargaining agreement, or when the arbitrator ignores the plain language of the contract."  Keebler, 80 F.3d at 287.

The Union contends that the district court erred in vacating the arbitration award because the arbitrator properly relied on

_____

[3]We note that West Publishing Company initially identified Judge Beam as both the district court judge in Keebler and the author of the court of appeals opinion.  Obviously, this would never occur and West has been informed of its error.

parole evidence to discern the intent of the parties as to whether employees who had been injured on the job could be terminated after a one-year medical leave of absence. Both the Union's position and the arbitrator's award are based on the premise that the provision of the CBA prohibiting discrimination against handicapped individuals (art. III) conflicts with the seniority provision (art. XIII, § 7(E)) of the CBA allowing Excel to terminate an employee who has been absent for more than one year for any reason. Thus, according to both the Union and the arbitrator, it is necessary to look to parole evidence to resolve the ambiguity created by the conflict of these two provisions in the CBA. We disagree.

The seniority provision of the CBA states in plain, unambiguous language that "[a]n employee shall lose his seniority . . . [if] [a]bsent from work for any reason [for] a period of twelve (12) months." Joint App. at 22-23 (emphasis added). The arbitrator acknowledged that this provision supported Excel's position that it could terminate even those employees on medical leave for over one year who were injured on the job.[4] Joint App. at 47. The arbitrator also recognized that article XII of the contract supported Excel's position because that provision expressly states that military and union leaves can last longer than one year, thereby supporting an inference that medical leaves of absence cannot last longer than one year. Id. at 47-48. The arbitrator then concluded that the factual record was insufficient to support a finding that Excel had discriminated against handicapped individuals in violation of article III of the CBA. Id. at 52. Despite these conclusions, however, the arbitrator went on to hold that the anti-discrimination provision (art. III) conflicted with the seniority provision (art. XIII, § 7) of the CBA and looked to parole evidence--e.g., notes taken during the

---

[4]The arbitrator concluded that the "loss of seniority" language included termination of employment.

negotiations between Excel and the Union prior to executing the applicable CBA--to discern the intent of the parties.

The arbitrator's reliance on parole evidence was erroneous because the plain language in the applicable portions of the CBA is clear and unambiguous.  Although an arbitrator's award is given great deference by a reviewing court, the arbitrator is not free to ignore or abandon the plain language of the CBA, which would in effect amend or alter the agreement without authority.  <u>E.g.</u>, <u>Inter-City Gas Corp. v. Boise Cascade Corp.</u>, 845 F.2d 184, 187-88 (8th Cir. 1988).  Of course, an arbitrator can and should consider the parties' past practices and "common law of the shop" to determine the scope of their agreement.  <u>See</u>, <u>e.g.</u>, <u>Trailways Lines, Inc. v. Trailways, Inc. Joint Council</u>, 807 F.2d 1416, 1423 (8th Cir. 1986).  When the language of the contract is clear and unambiguous, however, as in the present case, the arbitrator may not rely on parole evidence.  <u>See</u>, <u>e.g.</u>, <u>Coca-Cola Bottling Co. v. Teamsters Local Union No. 688</u>, 959 F.2d 1438, 1442 (8th Cir.), <u>cert. denied</u>, 506 U.S. 1013 (1992).  The parties agreed to the language and terms of the CBA and are bound by them.  <u>Id.</u>  Even when the arbitrator may look to collateral sources to interpret the CBA, the arbitrator cannot amend the agreement or impose new obligations upon the parties.  <u>See</u>, <u>e.g.</u>, <u>Keebler</u>, 80 F.3d at 288; <u>Northwest Airlines, Inc. v. International Ass'n of Machinists & Aerospace Workers, Air Transport Dist. Lodge No. 143</u>, 894 F.2d 998, 1000 (8th Cir. 1990).[5]

In the present case, the seniority provision does not facially discriminate against handicapped individuals.  It clearly applies to any employee absent from work for more than one year for any reason.  Thus, the seniority provision is facially neutral and does

_____

[5]The CBA itself contains this limitation on the arbitrator's authority in article XIV, which provides in relevant part:  "The arbitrator shall have no right to add to, modify, or amend the terms of the agreement."  Joint App. at 23.

-8-

not conflict with the anti-discrimination clause. The plain, unambiguous language of the CBA, therefore, negates the arbitrator's conclusion that the two provisions conflict.

Moreover, the seniority provision and the anti-discrimination clause do not conflict because the seniority provision does not discriminate against handicapped individuals as applied in this case. This conclusion is supported by the arbitrator's own factual findings--or more accurately, finding of insufficient facts. The arbitrator expressly states that "it is impossible to make a definitive finding as to whether the Company has discriminated against employees in contravention of Article III's handicape [sic] ban." Joint App. at 52. The arbitrator nevertheless concludes that "the Company has violated Article III and Article XIII, Section 7E, of the contract by terminating such employees after their twelve-month medical leaves of absence expired." Id. at 61. Therefore, the arbitrator's own factual findings not only directly contradict with the arbitrator's ultimate ruling, but also support our conclusion that the seniority provision has not been shown to be discriminatory against handicapped individuals as applied in this case. Accordingly, no conflict exists between the seniority provision and the anti-discrimination clause in this case and the arbitrator's reliance on parole evidence was unwarranted and erroneous.

We also agree with the district court's conclusion that the arbitrator ignored the plain language of article XXII of the CBA, which states:

> Section 1:  Entire Agreement.
>
> This is the complete Agreement providing all benefits to which any employee may be entitled, and it is expressly understood and agreed that <u>the Company has no obligation to any employee or employees other than those provided herein</u>.

-9-

Section 2:  Waiver.

The parties acknowledge that, during the negotiation which resulted in this Agreement, each has the unlimited right and opportunity to make demands and proposals with respect to any subject or matter not removed by law from the area of collective bargaining, and that the understanding and agreements arrived at by the parties after the exercise of that right and the opportunity are set forth in this Agreement.  Therefore, the Company and the Union, for the term of this Agreement, each voluntarily and unqualifiedly waives the right, and each agrees that the other shall not be obligated to bargain collectively with respect to any subject or matter referred to or covered in this Agreement.

Section 3:  Amendments.

Any modification or supplement to this Agreement to be effective must be reduced to writing and executed by the Business Manager of the Local Union or his designated representative and the Vice-President-Human Resources of the Company or his designated representative.

Joint App. at 26 (emphasis added).  By ignoring the plain language of several provisions in the CBA, the arbitrator created an ambiguity where none existed and proceeded "`to dispense his own brand of industrial justice.'"  See Coca-Cola Bottling Co., 959 F.2d at 1440 (quoting Enterprise Wheel & Car Corp., 363 U.S. at 597).  This, the arbitrator was not free to do.

We have also considered the Union's alternative argument that this case must be remanded for the arbitrator to reconsider alternative grounds for its decision.  Specifically, the Union asserts that terminating employees injured on the job after a one year medical leave of absence violates the "for cause" provisions found in the CBA.  We disagree.

The CBA contains "for cause" language in two separate provisions.  First, under the seniority provision of the CBA (art. XIII, § 7(B)), "[a]n employee shall lose his seniority . . . [if] [d]ischarge[d] for proper cause."  Joint App. at 22.  Second, under

-10-

the management rights provision (art. IV, § 1) of the CBA, management retains "the right to hire, suspend, discipline or discharge for cause, to assign jobs, to determine qualifications and the ability of employees, to transfer, promote or demote employees, [and] to increase and decrease the working force . . . ." Id. at 17. As discussed further below, neither provision containing "just cause" language conflicts with the provision authorizing Excel to discharge an employee who has been absent from work for over one year.

Analyzing first the terms of the seniority provision, absence for any reason for over one year is one of several express reasons for discharging an employee enumerated in that provision of the CBA. As previously noted, an employee can also be discharged for "proper cause" under a separate catchall subsection (§ 7(B)) of the seniority provision. Had employees been discharged pursuant to this catchall subsection, a remand would be necessary for the arbitrator to examine the facts of the discharge and to determine whether the employee was terminated for proper cause. In the present case, however, the employees were discharged pursuant to a different, and independent, subsection (§ 7(E)) that expressly authorizes Excel to discharge employees who have been absent for any reason for more than one year. Therefore, the "proper cause" language in subsection 7(B) of the seniority provision does not apply in the present case.

Turning next to the "for cause" language in the management rights provision (art. IV, § 1) of the CBA, we conclude that no ambiguity exists as to the interplay between that language and the seniority provision, which was interpreted by the arbitrator to include discharging employees. The management rights provision retains management's general right to discharge employees "for cause." As noted above, however, the seniority provision enumerates other specific conduct for which Excel could demote or discharge an employee, in addition to the catchall subsection that

-11-

allows termination for "proper cause."  When the CBA contains an express provision authorizing the termination of an employee for specific conduct, the general "for cause" provision in the CBA does not conflict with the express discharge provision and thus no ambiguity exists.  See Local 238 Int'l Bhd. of Teamsters v. Cargill, Inc., 66 F.3d 988, 990 (8th Cir. 1995) (per curiam); see also Warrior & Gulf Nav. Co. v. United Steelworkers, 996 F.2d 279, 281 (11th Cir. 1993) (per curiam), cert. denied, 114 S. Ct. 1834 (1994).

In Cargill, we upheld an arbitration award in which the arbitrator concluded that the company failed to demonstrate sufficient cause to warrant the discharge of an employee who violated the express terms of a drug and alcohol policy incorporated by reference into the CBA.  Importantly, however, we noted that "[i]f the collective bargaining agreement expressly provided that an employee who refuses to take an alcohol test `will be terminated,' we would agree with the district court's decision that the arbitrator's award `ignored the plain mandatory language' of that agreement [notwithstanding the just cause provision in the CBA.]"  Cargill, 66 F.3d at 990.  In Warrior & Gulf, 996 F.2d at 281, the court held that where the CBA expressly states that an employee who tests positive a second time for drugs is "subject to discharge," the company can fire an employee pursuant to that provision and such termination satisfies the "just cause" requirement as a matter of law.  Therefore, Excel can discharge an employee who violates one of the express conditions set out in the seniority provision and that termination satisfies the general "for cause" language in the management rights provision of the CBA.

The only ambiguity found by the arbitrator in the language of the seniority provision has already been resolved by the arbitrator--i.e., that "loss of seniority" means termination. Joint App. at 53.  Both the clear language of the CBA and the arbitrator's interpretation of the seniority provision support our

conclusion that discharging an employee after an absence of more than one year does not conflict with the "for proper cause" or "for cause" language in the CBA. Any other interpretation of the CBA would ignore its plain language and contradict the arbitrator's interpretation of an ambiguous term in the CBA. We conclude, therefore, that this issue need not be remanded to the arbitrator.

## III. CONCLUSION

Because the arbitrator ignored the plain language of the CBA, the award did not draw its essence from the agreement. Accordingly, we affirm the district court's order vacating the arbitration award and granting summary judgment to Excel.

McMILLIAN, Circuit Judge, dissenting.

I respectfully dissent. The arbitrator correctly observed that the CBA must be read as a whole in determining the respective rights and responsibilities of the parties. Joint App. at 47. I agree with the arbitrator's conclusion, upon review of the CBA as a whole, that tension exists between Article XIII, Section 7E, and Article III of the CBA, resulting in ambiguity in the contract. Therefore, in my opinion, the arbitrator acted appropriately in resolving the ambiguity by reference to parole evidence.

The evidence presented to the arbitrator demonstrated that the Company initially proposed in the collective bargaining negotiations a provision requiring loss of seniority based upon absences from work for any reason for a period of six months. Id. at 34. The Union responded by proposing a two-year time period instead of six months, with an exclusion for any employees injured on the job or receiving workers' compensation. Id. at 34-35. Consistent with these facts, the handwritten notes of Robert D. Mellinger, the Company's chief negotiator, included the following notation: "2 years - W.C. excluded." Id. at 35. The Company and

-13-

the Union then agreed to submit certain issues, including this loss of seniority issue, to subcommittees. Union representative Gerald E. Dodds testified that he, along with Company representative Dave Wessling and others, was on the subcommittee that addressed the loss of seniority issue and that they met on January 28, 1988. Id. According to Dodds, the Company again proposed, in the subcommittee, contract language that required loss of seniority based upon absences from work "for any reason [for] a period of six (6) months." Id. Dodds further testified that "the Union then proposed that leaves of absences last twelve months, provided that employees injured on the job and/or who were on workers' compensation be retained past that period." Id. at 35-36. Dodds also testified that "we were in a subcommittee meeting and it was settled that one would lose seniority after one year with the exception of workman's comp." Id. at 36. Dodds' contemporaneous handwritten notes (which the Company provided) accordingly stated in the margin: "work comp. doesn't count." Id.

Upon review of this and other evidence presented, the arbitrator observed "it is undisputed that the Union in negotiations steadfastly insisted on excluding employees injured on the job from any agreement to limit the time of other leaves. Thus, Mellinger's own October 22-23, 1987, bargaining notes state that the Union had proposed: '2 years - W.C. excluded.'" Id. at 53. The arbitrator further noted "there is no evidence in this record showing that the Union ever expressly dropped its insistence that employees injured on the job be so excluded. Indeed, Mellinger testified that his bargaining notes contain no reference whatsoever to any such drop." Id. Moreover, the arbitrator observed, "Dodds testified without contradiction that the Union on January 28, 1988, reiterated this exclusion to Wessling and that the Union then agreed to the one year limitation ultimately agreed to on the express condition that it not cover employees injured on the job." Id. at 53-54. In light of these circumstances, the arbitrator reasoned, "the Company was then required to

-14-

affirmatively state that it was not agreeing to the workers' compensation exclusion if that was the message it wanted to convey at the time." Id. at 59. Having failed to do so, the arbitrator opined, the Company, by its silence and other conduct, manifested its assent to the exclusion as stated in the Union's counterproposal. Id. In other words, the Company had induced the Union into believing it had agreed to the exclusion and, consequently, it was bound to honor the exclusion. Id. at 59-60.

I agree. The parole evidence presented at the arbitration hearing was appropriately considered and abundantly supported the conclusion that the parties intended to exclude from Article XIII, Section 7E, any employee on leave due to injury on the job or on medical leave. The arbitrator's award therefore does draw its essence from the CBA. Accordingly, I would reverse the order of the district court and uphold the arbitrator's award.

A true copy.

    Attest:

        CLERK, U. S. COURT OF APPEALS, EIGHTH CIRCUIT.