[DO NOT PUBLISH]

IN THE UNITED STATES COURT OF APPEALS

FOR THE ELEVENTH CIRCUIT

_____

No. 13-12522
Non-Argument Calendar
_____

D.C. Docket No. 1:12-cr-20710-KMM-1

UNITED STATES OF AMERICA,

Plaintiff-Appellee,

versus

DARCY PILOTO,

Defendant-Appellant.

_____

Appeal from the United States District Court
for the Southern District of Florida
_____

(April 10, 2014)

Before TJOFLAT, WILSON and JORDAN, Circuit Judges.

PER CURIAM:

Darcy Piloto appeals his conviction and 235-month sentence for one count

of possession of a firearm and ammunition by a convicted felon, in violation of 18

U.S.C. §§ 922(g)(1) and 924(e)(1).  On appeal, Piloto first argues that the district court violated his Sixth Amendment right to the assistance of counsel when it allegedly required him to proceed pro se after he moved to dismiss his appointed counsel and for the appointment of new counsel.  Piloto contends that the district court did not properly consider his motion to appoint new counsel, instead "converting" his motion into a motion to proceed pro se.  Second, Piloto argues that the district court erred in characterizing his prior felony conviction under Florida's fleeing-by-boat statute, Fla. Stat. § 843.18(1), as a "violent felony" for the purposes of the Armed Career Criminal Act (ACCA).  He argues that his conviction is distinguishable from vehicular flight, which we have determined to be a "violent felony," chiefly because the statute does not require that the boat be motorized.  Finally, Piloto contends that the district court erred by denying his motion to suppress evidence, citing (1) the impermissible taint of information obtained from his allegedly unlawful arrest and the subsequent search; and (2) the omission of allegedly material, exculpatory information from the affidavit.  The affidavit included information from the protective sweep made by officers after Piloto's arrest, Piloto's custodial interrogation, a prior victim's description and identification—in a photo array—of Piloto, and a tip from a confidential informant (CI).  Piloto asserts that the search warrant, excised of all tainted information and augmented by the omissions, was insufficient to establish probable cause.

2

## I.

Pursuant to the Sixth Amendment, criminal defendants are entitled to the assistance of counsel. *United States v. Garey*, 540 F.3d 1253, 1262 (11th Cir. 2008) (en banc). However, the Sixth Amendment "does not grant defendants the unqualified right to counsel of their choice," *id.* at 1263, and an indigent criminal defendant does not have the right to "demand a different appointed lawyer except for good cause." *Id.* (internal quotation marks omitted). We define "good cause" as "a fundamental problem, such as a conflict of interest, a complete breakdown in communication or an irreconcilable conflict which leads to an apparently unjust verdict." *Id.* (internal quotation marks omitted). "In practical terms, then, defendants who lack the means to hire a private attorney must either accept the counsel appointed to represent them or represent themselves." *Id.* at 1263–64.

A criminal defendant may waive his right to counsel, so long as he does so intentionally and knowingly. *Id.* at 1263. "A district court's conclusion that a defendant's waiver is valid—that it is knowing, voluntary, and intelligent—is a mixed question of law and fact that we review de novo." *United States v. Kimball*, 291 F.3d 726, 730 (11th Cir. 2002) (per curiam). A waiver of the right to assistance of counsel should be clear and unequivocal. *Faretta v. California*, 422 U.S. 806, 835, 95 S. Ct. 2525, 2541 (1975). We have interpreted *Faretta* to instruct that a trial court ideally should hold a hearing to advise a criminal

3

defendant on the dangers of proceeding pro se and make an explicit finding that the defendant has chosen self-representation with adequate knowledge of the possible consequences. *Fitzpatrick v. Wainwright*, 800 F.2d 1057, 1065 (11th Cir. 1986). The inquiry must include questions directed to the defendant that ensure his intelligent, knowing, and voluntary waiver of his right. *Faretta,* 422 U.S. at 835, 95 S. Ct. at 2541.

We have held that a criminal defendant may waive his right to counsel through his conduct, even when his statements do not evidence a "clear and unequivocal" waiver. *Garey*, 540 F.3d at 1264 (internal quotation marks omitted). In *Garey*, we stated that, if a defendant rejects his court-appointed counsel, "a district court does not compromise the defendant's free choice by presenting him with accurate information regarding his lawful choices and asking him to choose between them." *Id*. at 1265–66. Further, "when an indigent defendant rejects competent, conflict-free counsel, he may waive his right to counsel by his uncooperative conduct, so long as his decision is made with knowledge of his options and the consequences of his choice." *Id*. at 1266.

When "a district court conducts an inquiry into the merits of a criminal defendant's motion for new counsel, we review the district judge's ruling for abuse of discretion." *United States v. Calderon*, 127 F.3d 1314, 1343 (11th Cir. 1997). We have determined a number of factors to consider during review, including "1)

4

the timeliness of the motion; 2) the adequacy of the court's inquiry into merits of the motion; and 3) whether the conflict was so great that it resulted in a total lack of communication between the defendant and his counsel thereby preventing an adequate defense." *Id*.

In this case, the district court did not violate Piloto's Sixth Amendment rights by denying his motion to appoint new counsel or by allowing him to proceed pro se. Piloto did not establish good cause for the appointment of new counsel, even though the district court allowed him to argue the merits of the motion for over twenty minutes. Instead, the government explained that Piloto had conflated the instant prosecution with related state-law charges which were being prosecuted in state court and for which the federal public defender was not acting as counsel. After his motion to appoint counsel was denied, Piloto waived his right to the assistance of counsel through his repeated and adamant rejection of his existing appointed counsel, even after the court clearly explained that his legal options consisted only of proceeding with his appointed counsel or proceeding pro se.

## II.

We review de novo whether a particular prior conviction is a "violent felony" for the purposes of the ACCA. *United States v. Canty*, 570 F.3d 1251, 1254 (11th Cir. 2009).

Section 4B1.4(a) of the Sentencing Guidelines provides that a defendant who is subject to an enhanced sentence under 18 U.S.C. § 924(e) is an "armed career criminal" subject to an offense level that is the greatest of (1) their calculated base offense level under Chapters Two and Three of the Sentencing Guidelines; (2) their offense level under U.S.S.G. § 4B1.1 for "career offenders"; or (3) a default level of 33, barring the applicability of a higher level 34 if the defendant used or possessed a firearm during a crime of violence or controlled substance offense, or the firearm was of a certain type.  U.S.S.G. § 4B1.4(a), (b)(1)–(3).

Under § 924(e) of Title 18 of the United States Code, a defendant is subject to a 15-year statutory minimum sentence where he violates § 922(g) and has three distinct prior convictions for a violent felony, serious drug offense, or both.  18 U.S.C. § 924(e)(1).  Section 924(e)(2)(B) defines a "violent felony" as:

> any crime punishable by imprisonment for a term exceeding one year . . . that–
>
> (i) has as an element the use, attempted use, or threatened use of physical force against the person of another; or
>
> (ii) is burglary, arson, or extortion, involves use of explosives, or otherwise involves conduct that presents a serious potential risk of physical injury to another.

18 U.S.C. § 924(e)(2)(B).  The residual clause contained in § 924(e)(2)(B)(ii) encompasses any crime in which "the risk posed . . . is comparable to that posed by

6

its closest analog among the enumerated offenses." *James v. United States*, 550 U.S. 192, 203, 127 S. Ct. 1586, 1594 (2007).

In determining whether a prior conviction qualifies as a violent felony, we generally use a categorical approach, considering "the offense as defined by the law, rather than considering the facts of the specific violation." *United States v. Archer*, 531 F.3d 1347, 1350 (11th Cir. 2008). Thus, in analyzing the nature and risk of the offense, we consider the ordinary case to determine how the crime is usually committed and do not inquire into the specific conduct of the particular offender. *United States v. Proch*, 637 F.3d 1262, 1266 (11th Cir. 2011).

The statute in question in this case is Florida's fleeing-by-boat statute, which states, in relevant part:

> It is unlawful for the operator of any boat plying the waters of the state, having knowledge that she or he has been directed to stop such vessel by a duly authorized law enforcement officer, willfully to refuse or fail to stop in compliance with such directive or, having stopped in knowing compliance with such a directive, willfully to flee in an attempt to elude such officer.

Fla. Stat. § 843.18(1). The most closely analogous offense to the fleeing-by-boat statute that we have considered to determine whether it qualifies for enhancement under § 924(e) is vehicular flight.

In *Sykes v. United States*, the Supreme Court held that an Indiana conviction for felony vehicle flight was a "violent felony" under the ACCA. 564 U.S. ___, ___, 131 S. Ct. 2267, 2277 (2011). That statute prohibited a person from "flee[ing]

7

from a law enforcement officer after the officer has, by visible or audible means, identified himself and ordered the person to stop," and makes it a felony to do so if "the person uses a vehicle to commit the offense." *Id*. at ___, 131 S. Ct. at 2271 (quoting former Ind. Code § 35-44-3-3). In determining that the crime was a violent felony, the Court said:

> Risk of violence is inherent to vehicle flight. Between the confrontations that initiate and terminate the incident, the intervening pursuit creates high risks of crashes. . . . It is well known that when offenders use motor vehicles as their means of escape they create serious potential risks of physical injury to others. Flight from a law enforcement officer invites, even demands, pursuit. As that pursuit continues, the risk of an accident accumulates. And having chosen to flee, and thereby commit a crime, the perpetrator has all the more reason to seek to avoid capture.

*Id*. at ___, 131 S. Ct. at 2274. The Court also noted that "[s]erious and substantial risks are an inherent part of vehicle flight." *Id*. at ___, 131 S. Ct. at 2276.

We applied the Supreme Court's reasoning in *Sykes* to Florida's vehicular flight statute in *United States v. Petite*, 703 F.3d 1290, 1294–97 (11th Cir.), *cert. denied*, __ U.S. __, 134 S. Ct. 182 (2013). In *Petite*, we held that a Florida conviction under § 316.1935(2) is categorically a violent felony under the ACCA because there is an inherent risk of violence in using a vehicle to flee and elude a police officer. *Petite*, 703 F.3d at 1296, 1300–01. Using a vehicle to flee shows a "determination to elude capture," in defiance of law enforcement, that "makes a lack of concern for the safety of property and persons of pedestrians and other

8

drivers an inherent part of the offense." *Id*. at 1295 (quoting *Sykes*, 564 U.S. at

___, 131 S. Ct. at 2273).  Beyond posing serious and substantial risks, we also

determined that the risks posed by simple vehicle flight are similar in degree of

danger to the risks of arson and burglary. *Id*. at 1295–96; *Sykes*, 564 U.S. at ___,

131 S. Ct. at 2274 (noting that vehicle flight actually "presents more certain risk as

a categorical matter than burglary").  We stated that "*any* form of intentional

vehicle flight from a police officer presents powerful risks comparable to those

presented by arson and burglary," as "[t]he calculus also must take into account the

obvious fact that vehicle flight from a law enforcement vehicle—in direct defiance

of an officer's orders—necessarily provokes a confrontational response from the

officer." *Petite*, 703 F.3d at 1296.  Perhaps most importantly, neither the statute at

issue in *Petite* nor that at issue in *Sykes* "ha[d] as an element anything related to

driving at a high speed or operating the vehicle in a reckless manner." *Id.* at 1295.

Moreover, in *Petite* we held that "we are obliged to look beyond the driving

conduct of the offender alone" and consider risks emanating from all parties'

conduct, including those that present themselves "even after the pursuit has ended

and the vehicles have stopped moving." *Id.* at 1296.

　　Here, the district court correctly concluded that Piloto's violation of

Florida's fleeing-by-boat statute constituted a violent felony.  Essentially, Piloto

has argued that fleeing by boat can be materially distinguished from vehicular

flight because vehicles are inherently capable of traveling at high speeds, placing civilian bystanders and police giving chase at risk of serious bodily injury and death, while boats may be propelled by, for example, oar and therefore may not be capable of reaching speeds which would place anyone in danger.  However, even putting aside the fact that even some motor vehicles may be incapable of traveling at dangerous speeds, our emphasis in *Petite* on the conduct of the pursuing officers, during and even after the chase, minimizes the relevance to our inquiry of the speed of which the instrumentality used to flee is capable.  *See Sykes*, 564 U.S. at __, 131 S. Ct. at 2273 ("Even if the criminal attempting to elude capture drives *without going at full speed* . . . , he creates the possibility that police will . . . exceed or almost match his speed or use force to bring him within their custody.  A perpetrator's indifference to these collateral consequences has violent—even lethal—potential for others." (emphasis added)).

## III.

"A district court's denial of a motion to suppress is a mixed question of law and fact."  *United States v. Frank*, 599 F.3d 1221, 1228 (11th Cir. 2010).  "We review factual findings for clear error, but we review the district court's application of the law to those facts de novo."  *Id*.

## A.

The Fourth Amendment protects the public from unreasonable searches and seizures. U.S. Const. amend. IV.  According to the exclusionary rule, the prosecution may not introduce any evidence obtained as a result of a Fourth Amendment violation.  *United States v. Noriega*, 676 F.3d 1252, 1259 (11th Cir. 2012).  However, under the independent source exception, "evidence obtained from a lawful source that is independent of any Fourth Amendment violation is admissible."  *Id*. at 1260.  When a law enforcement officer bases a search warrant in part on what she sees during an arguably unlawful entry, we look to a two-part test to determine whether it meets the exception.  *Id*.  First, we excise from the search warrant any information obtained during the illegal entry and determine whether the remaining information supports probable cause.  *Id*.  If the non-excised information supports probable cause, we then determine whether the "officer's decision to seek the warrant was prompted by what he had seen during the arguably illegal entry."  *Id*. (internal quotation marks omitted).

On appeal, Piloto asserts that (1) his arrest, the subsequent sweep of his home, and his custodial interrogation were unlawful; and (2) the search warrant affidavit, when excised of the allegedly unlawfully obtained information, does not support probable cause.[1]  After excising such information, what remains in the

---

[1] Piloto fails to make, and thus abandons, the argument regarding the second component of the *Noriega* inquiry: that the decision to seek the warrant was prompted by the unlawful entry. *See United States v. Jernigan*, 341 F.3d 1273, 1283 n.8 (11th Cir. 2003).

11

affidavit is the identification of Piloto's residence, the victim's identification of Piloto in the photo array, and the information provided by the CI.

To make a showing of probable cause for a search warrant for a residence, the affidavit must demonstrate a nexus between the premises and both the alleged criminal activity and the defendant; it is not a requisite that the affidavit shows that illegal activity took place at the residence. *United States v. Kapordelis*, 569 F.3d 1291, 1310 (11th Cir. 2009). Therefore, probable cause to search a home exists if the affidavit contains evidence that the defendant possesses contraband that would typically be kept in the home. *United States v. Anton*, 546 F.3d 1355, 1358 (11th Cir. 2008). The affidavit must also show that probable cause exists when the warrant is issued. *United States v. Bervaldi*, 226 F.3d 1256, 1264 (11th Cir. 2000). Courts should consider time, "nature of the suspected crime (discrete crimes or ongoing conspiracy), habits of the accused, character of the items sought, and nature and function of the premises to be searched" when determining whether probable cause exists at issuance—i.e., that it is not stale. *United States v. Harris*, 20 F.3d 445, 450 (11th Cir. 1994).

The affidavit established a nexus between Piloto and the residence because it explicitly stated that he lived there. This information was ripe because, as the affidavit makes clear, the officers learned of the location of his residence on the day they applied for the warrant.

The affidavit also established the requisite nexus between the alleged illegal activity and the residence because the nature of the alleged crime—possession of a firearm by a felon—demonstrated a fair probability that evidence of the crime would be found in the residence. *See Anton*, 546 F.3d at 1358 (noting that felons unlawfully in possession of a firearm would typically keep that firearm at home). Further, the information establishing this nexus was not stale. While time is a factor to be considered when assessing staleness, it is not dispositive, nor is there a specific time limit. *Bervaldi*, 226 F.3d at 1264; *see United States v. Hooshmand*, 931 F.2d 725, 735–36 (11th Cir. 1991) (holding that 11-month-old information was not stale because "[w]hen the alleged criminal activity is ongoing . . . , it is unlikely that the passage of time will dissipate probable cause"). Unlawful possession of a firearm is an ongoing crime, so "old" information is relevant to the question of present probable cause. Additionally, unlike narcotics, firearms are not consumable items; it would be reasonable to believe that Piloto continued to possess his gun in his home for at least 13 months. Therefore, the affidavit established probable cause even without the excised information.

## B.

Probable cause may be called into question, and a defendant is entitled to a hearing on the validity of a search warrant where (1) the affiant knowingly or recklessly omits facts the defendant enumerates, and (2) "inclusion of the facts

13

would have prevented a finding of probable cause." *United States v. Jenkins*, 901 F.2d 1075, 1080 (11th Cir. 1990). In his brief, Piloto notes the omission from the affidavit of (1) the role played by the CI in identifying Piloto; (2) the victim's erroneous description of Piloto; and (3) the circumstances surrounding the victim's identification of Piloto in a photo array. However, even if this information was included, it would not have defeated probable cause.

First, Piloto does not explain why the CI's identification of Piloto diminishes the likelihood of finding probable cause, and we can discern no reason why it would. In fact, the district court noted that it only served to further establish the nexus among Piloto, his residence, and the evidence to be found. Second, though the victim's initial description of Piloto was not accurate, his later identification combined with the CI's tip quiets our concern regarding this point and establishes Piloto's identity. Third, the photo identification procedure was not improper. Such an identification is not admissible if the procedure (1) is unduly suggestive; and (2) "given the totality of the circumstances, created a substantial risk of irreparable misidentification at trial." *Williams v. Weldon*, 826 F.2d 1018, 1021 (11th Cir. 1987). The district court, however, "affirmatively [found] that the photographic arrays that Det. Suarez utilized were objectively reasonable," and Piloto gives us no reason to disagree.

## C.

14

Piloto has not established that there was no probable cause to grant a search warrant for his residence.  Because that is the sole ground on which he challenges the denial of his motion to suppress, we affirm the district court's denial of the motion.

## IV.

Upon review of the entire record on appeal, and after consideration of the parties' appellate briefs, we affirm the judgment of the district court.

**AFFIRMED.**