_____

No. 95-1919
_____

Keebler Company,                        *
                                        *
        Appellant,                      *
                                        *
    v.                                  *
                                        *  Appeal from the United States
Milk Drivers and Dairy                  *  District Court for the
Employees Union, Local No. 471,         *  District of Minnesota.
affiliated with the                     *
International Brotherhood               *
of Teamsters, Chauffeurs,               *
Warehousemen, and Helpers              *
of America, AFL-CIO,                    *
                                        *
        Appellee.                       *

_____

Submitted:  November 15, 1995

Filed:  April 4, 1996
_____

Before BEAM, JOHN R. GIBSON, and MORRIS SHEPPARD ARNOLD, Circuit Judges.
_____

BEAM, Circuit Judge.

        Keebler Company (Keebler) appeals the district court's confirmation of a labor arbitration award, in which the arbitrator concluded that Keebler could not transfer certain accounts from a union marketing division to a non-union division without the agreement of the Milk Drivers and Dairy Employees Union, Local No. 471 (the Union).  Because the arbitrator's award does not draw its essence from the collective bargaining agreement, we reverse and remand.

## I.    BACKGROUND

The facts of this case are not in dispute and are derived from the arbitrator's award.[1]   Keebler, a national manufacturer of snack-food products, uses two separate methods of selling its wares.  The Grocery Sales Division operates under a "store-to-door" procedure, which services the larger accounts.  Under this method, a Keebler sales representative calls upon individual stores classified as either "Trade Class I" or "Trade Class II" (chain supermarkets and large independent supermarkets).  Generally, the Keebler sales representative takes orders for these accounts, and Union employees working at regional distribution centers fill the orders.  Union drivers then deliver the products to customers.

Keebler management determined that the store-to-door method was not an efficient way to sell their products to smaller stores.  Thus, in 1991, Keebler and the Union entered into an agreement (side agreement) that allowed Keebler to transfer certain accounts to a new Convenience Division, in which a "route sales" or "step van sales" method of marketing would be used.  Under this procedure, smaller accounts are assigned to a single employee who handles both product sales and delivery.  The side agreement provides that these employees are not under the Union's jurisdiction.  It also provides, however, that no Class I or Class II accounts can be serviced by this method "unless such accounts have been discussed with the Union."  Finally, the side agreement mandates that any disagreement over such transfers are subject to the grievance procedure outlined in the collective bargaining agreement, which includes an arbitration clause.

In 1991, Keebler transferred the account of a Winona (Minnesota) customer to the route sales method.  The Union, through its Chief Steward, Scott Madison, responded by filing a class-

---

[1]The proceedings before the arbitrator were not transcribed.

action grievance in which it alleged that Keebler had violated the side agreement. Prior to the scheduled arbitration, the parties reached a settlement, which stated:

> The parties agree that the work involving the Scott Madison grievance of [June 27, 1991] was a bargaining unit account, and the Company acknowledges that settlement of this particular grievance does not mean the Company has the right in the future to transfer any future or present #1 or #2 or present accounts without agreement of the Union.

Appellant's App. at 112 (settlement letter).

In December 1993, Keebler notified the Union that it wished to discuss the transfer of several accounts to the Convenience Division. Keebler subsequently notified the Union that certain stores in western Wisconsin would be converted to step van sales. The Union filed a grievance and asserted that Keebler had violated both the side agreement and the settlement letter. After entering into discussions, Keebler and the Union agreed upon most of the proposed transfers. The parties, however, could not agree upon two of the stores that Keebler wished to transfer to the Convenience Division. Pursuant to the collective bargaining agreement, the parties selected an arbitrator and scheduled a hearing. Prior to the hearing, Keebler restored one of the two accounts to the Union's jurisdiction, leaving only one account in dispute.

At the hearing, the Union contended that Keebler could not transfer certain bargaining unit work to the Convenience Division without prior approval of the Union. The Union relied primarily on the language in the side agreement and the settlement letter to support its contention. Keebler argued that the transfer did not violate either the collective bargaining agreement or the side agreement. Specifically, Keebler asserted that the side agreement did not create an absolute right in the Union to veto all proposed transfers.

-3-

The arbitrator determined that Keebler was obligated to obtain the agreement of the Union before it could transfer an account to the Convenience Division and sustained the Union's grievance. On review, the district court denied Keebler's motion for summary judgment, dismissed Keebler's complaint with prejudice, and confirmed the arbitrator's award. Keebler appeals the district court's order, contending that the arbitrator's award must be vacated because it does not draw its essence from the parties' agreements.

## II. DISCUSSION

Our review of an arbitrator's award under section 301 of the Labor Management Relations Act, 29 U.S.C. § 185, is limited to determining whether: (1) the parties agreed to arbitrate; and (2) the arbitrator had the power to make the award that he made. Daniel Const. Co. v. International Union of Operating Eng'rs, Local 513, 738 F.2d 296, 301 (8th Cir. 1984) (citing United Steelworkers v. Warrior & Gulf Navigation Co., 363 U.S. 574, 582 (1960). In the present case, the parties do not dispute that they agreed to arbitrate. Consequently, our analysis focuses on whether the arbitrator had the power to enter the award.

The Supreme Court long ago determined that a labor arbitration award should be enforced "so long as it draws its essence from the collective bargaining agreement." United Steelworkers v. Enterprise Wheel & Car Corp., 363 U.S. 593, 597 (1960). This extraordinary level of deference has not diminished in recent years.[2] "[A]s long as the arbitrator is even arguably construing

---

[2]The district court's order confirming the arbitrator's award, however, is not entitled to any special deference on review and thus we review the district court's conclusions of law de novo. First Options of Chicago, Inc. v. Kaplan, 115 S. Ct. 1920, 1926 (1995); PaineWebber, Inc. v. Agron, 49 F.3d 347, 350 n.2 (8th Cir. 1995).

or applying the contract and acting within the scope of his authority, that a court is convinced he committed serious error does not suffice to overturn his decision." United Paperworkers Int'l Union, AFL-CIO v. Misco, Inc., 484 U.S. 29, 38 (1987). A reviewing court, however, may vacate an arbitration award when the award does not derive its essence from the collective bargaining agreement, or when the arbitrator ignores the plain language of the contract. Iowa Mold Tooling Co., Inc. v. Teamsters Local Union No. 828, 16 F.3d 311, 312 (8th Cir. 1994) (citing Coca-Cola Bottling Co. v. Teamsters Local Union No. 688, 959 F.2d 1438, 1440 (8th Cir.), cert. denied, 506 U.S. 1013 (1992)); see also Northwest Airlines, Inc. v. International Ass'n of Machinists & Aerospace Workers, Air Transport Dist. Lodge No. 143, 894 F.2d 998, 999-1000 (8th Cir. 1990); Inter-City Gas Corp. v. Boise Cascade Corp., 845 F.2d 184, 187-88 (8th Cir. 1988).[3] Keebler asserts that the arbitrator committed several errors that render his award fatally flawed. We agree.

Keebler asserts that the arbitrator's award does not draw its essence from the collective bargaining agreement or the side agreement because the arbitrator expressly stated that under those agreements, Keebler would have been able to transfer the account at issue after merely discussing it with the Union and absent Union agreement. The arbitrator found that under the collective bargaining agreement and side agreement, Keebler was only obligated to discuss the proposed transfer of certain accounts to non-union workers. See Appellant's App. at 123. Specifically, the arbitrator concluded: "It is clear that, prior to April 1992 [the date of the settlement letter], the Employer [Keebler] could proceed to make the transfers after talking it over with the Local [Union], even if the employee bargaining representative did not

---

[3]Of course, "decisions procured by the parties through fraud or through the arbitrator's dishonesty [also] need not be enforced." Misco, 484 U.S. at 38.

concur with the proposed changes." Id. The arbitrator found that Keebler's obligation to obtain Union agreement arose under the settlement letter, to which the arbitrator apparently also looked to discern the parties' intent under the collective bargaining agreement and the side agreement.

The arbitrator's analysis contains a glaring internal inconsistency. The arbitrator concludes that under the language of the collective bargaining agreement and side agreement, "it is clear" that Keebler was only obligated to discuss transfers with the Union; while at the same time, the arbitrator purportedly looks to the settlement letter and past practice to discern the parties' intent under the same side agreement. It is evident from the arbitrator's analysis that he relied on the settlement letter, rather than the collective bargaining agreement or side agreement, as the source of Keebler's obligation to obtain Union agreement and thus the arbitrator's award does not draw its essence from those agreements.

Although an arbitrator may look to sources other than the collective bargaining agreement, or the side agreement, to aid in his interpretation of the contract, see, e.g., Iowa Beef Processors, Inc. v. Amalgamated Meat Cutters & Butcher Workmen of N. America, AFL-CIO, 627 F.2d 853, 857 (8th Cir. 1980), the arbitrator may not amend the contract, Manhattan Coffee Co. v. International Bhd. of Teamsters, Chauffeurs, Warehousemen & Helpers, Local No. 688, 743 F.2d 621, 623 (8th Cir. 1984), cert. denied, 471 U.S. 1100 (1985). "The arbitrator has a right to interpret and apply the contract and in doing so to consider not only the formal agreement but collateral materials as well including past prevailing practices in the company plant." Iowa Beef Processors, Inc., 627 F.2d at 857 (citation omitted).

In the present case, the arbitrator concluded that the settlement letter and Keebler's actions subsequent to the

settlement in 1992 indicated that Keebler believed it was required to obtain the Union's agreement prior to transferring certain accounts. Specifically, the arbitrator concluded:

> [Keebler's] acquiescence in dropping an account which the Union did not agree to be transferred in late 1993, is most consistent with (and therefore supportive of) the position being taken by the [Union] here. The Union did not agree to the transfer of Bob's Westside Store, and thus it was not moved to the Convenience Division.

Appellant's App. at 124. Although the arbitrator is free to look to past practice to construe ambiguous contract language, he cannot amend the contract. Manhattan Coffee Co., 743 F.2d at 623. We could not disturb the arbitrator's award if he interpreted ambiguous language in the collective bargaining agreement or side agreement to support his conclusion that Keebler could not transfer this account without the agreement of the Union, even if his interpretation of the agreement had been erroneous. See, e.g., Misco, 484 U.S. at 37-38; Dreis & Krump Manf. Co. v. International Ass'n of Machinists & Aerospace Workers, Dist. No. 8, 802 F.2d 247, 253 (7th Cir. 1986). However, because the arbitrator found that under the clear terms of the collective bargaining agreement and side agreement Keebler was only obligated to discuss transfers with the Union, the arbitrator was not construing an ambiguous contract term, but rather was imposing a new obligation upon Keebler thereby amending the collective bargaining agreement and the side agreement. Therefore, the arbitrator erred in imposing a new obligation upon Keebler that was not, by the arbitrator's own findings, in existence prior to the settlement letter.[4]

---

[4]An arbitrator may not ignore the plain language of the contract because that would, in effect, amend the contract. See, e.g., Inter-City Gas Corp., 845 F.2d at 187-88. This is especially true in cases, such as the present one, where the arbitrator himself finds the contract terms to be clear but nevertheless enters an award contrary to those terms.

Keebler also argues that the arbitrator erred in expressly relying on language not found in any agreement between the parties to support his award. We agree. The arbitrator misquoted the key language from the settlement letter on which he relied to support his conclusion. The arbitrator substituted language that had been rejected for the actual language in the settlement letter.[5] The settlement letter states, in pertinent part, that "settlement of this particular grievance <u>does not mean the Company has the right</u> in the future to transfer . . . [certain] accounts without agreement of the Union." Appellant's App. at 112 (emphasis added). The rejected language quoted by the arbitrator states, in relevant part, that "settlement of this particular grievance <u>means the Company does not have the right</u> in the future to transfer . . . [certain] accounts without agreement of the Union." <u>Id.</u> (emphasis added); <u>see also id.</u> at 122-23. Accordingly, the arbitrator erroneously relied on rejected language to conclude that the settlement letter affirmatively created a new obligation on Keebler requiring it to obtain Union agreement prior to transferring certain accounts, when in fact, the actual language in the settlement letter makes it abundantly clear that the parties intended for the settlement to have no particular effect on future transfers.[6]

In sum, the arbitrator amended the terms of the side agreement, which he found to be clear, by imposing a new obligation on Keebler to obtain Union agreement prior to transferring certain accounts. The arbitrator based his decision largely on erroneously quoted language from a settlement letter, which settlement letter

---

[5]Although the arbitrator correctly quoted the settlement letter in his factual summary, he misquoted the language when he relied on it in his analysis.

[6]We have vacated arbitration awards "where relevant language was not considered by the arbitrator." <u>See</u> <u>George A. Hormel & Co. v. United Food & Commercial Workers, Local 9, AFL-CIO</u>, 879 F.2d 347, 351 (8th Cir. 1989) (citation omitted).

was actually intended to have no effect on future transfers. Even given our limited role in reviewing arbitration awards, we conclude that the award in the present case must be vacated because the arbitrator's award does not draw its essence from the collective bargaining agreement or the side agreement.

## III. CONCLUSION

For the reasons discussed above, we vacate the arbitrator's award in favor of the Union. Accordingly, we reverse the district court's order confirming the arbitrator's award and remand to the district court to enter an order vacating the award.

A true copy.

Attest:

CLERK, U. S. COURT OF APPEALS, EIGHTH CIRCUIT.