183 F.Supp.2d 1164 (2001)
THE DIAL CORPORATION, Plaintiff,
v.
AUTOMOTIVE, PETROLEUM AND ALLIED INDUSTRIES EMPLOYEES UNION, LOCAL 618, affiliated with the International Brotherhood of Teamsters, AFL-CIO, Defendant.
No. 4:00CV1650 RWS.
United States District Court, E.D. Missouri, Eastern Division.
July 5, 2001.
*1165 Hollye Stolz Atwood, Partner, Gregg M. Lemley, Bryan Cave, LLP, St. Louis, MO, Michael R. Flaherty, Jackson, Lewis Schnitzler & Krupman, Chicago, IL, for Plaintiff.
Clyde E. Craig, St. Louis, MO, for Defendant.

MEMORANDUM AND ORDER
SIPPEL, District Judge.
The Dial Corporation ("Dial") and Automotive, Petroleum and Allied Industries Employees Union, Local 618, affiliated with the International Brotherhood of Teamsters, AFL-CIO ("the Union") submitted their dispute regarding appropriate pay for Shipping Clerks to arbitration. Dial filed this lawsuit claiming that the arbitrator ignored a crucial portion of the analysis required by the collective bargaining agreement in making his decision to increase the Shipping Clerks' rate of pay. Dial claims the arbitrator exceeded his authority and seeks to set aside the award. The Union filed a counterclaim alleging that Dial has refused to comply with the arbitrator's award.
Both parties have filed motions for summary judgment. Because the Court finds that the arbitration award was drawn from the essence of the collective bargaining agreement, the Court will grant the Union's motion for summary judgment, and as a result, deny Dial's motion for summary judgment.

I. Facts
Dial is a manufacturer of laundry detergent products and is authorized to do business in Missouri. The Union is a collective bargaining representative for about 260 Dial employees at the St. Louis facility. Dial and the Union entered into a collective bargaining agreement in effect from July 8, 1998 to July 8, 2001.
*1166 On July 5, 1999, Dial installed a computer system used to log shipments into the plant from a batch system, Opus, to a real time system, Oracle. The new system added approximately 10 minutes per shipment to the Shipping Clerks' previous log time. The facility logs on average 50 to 55 shipments each day. Due to the increased time the new system required, Dial doubled the number of employees within this department. Before the new system was installed, one Shipping Clerk worked each shift. Since the installment of the new system, two Shipping Clerks are needed during every shift.
Due to the installation of the new system, the Shipping Clerks filed a grievance on October 4, 1999, regarding appropriate pay for their new responsibilities. The grievance reads as follows:
We, The Shipping Clerks At 020 Plant Warehouse, Request An Upgrade In Pay To Tech IV Line Leader Due To New Technology Being Used In Our Day To Day Business, Such As The NEW ESS System For Manual Reservation And Pick Ticket Generation, Transportation Module For Shipment Inquiries, Preshipment Printing Of Bill Of Ladings And Shipment Conformation And The Oracle/GEM's System For Input Of Batches From Production. The Increased Knowledge And Computer Skills That The Shipping Clerks Must Acquire And Retain To Run The These NEW SYSTEMS And The ADDED RESPONSIBILITY We Incur By Running These NEW SYSTEM Is An Adequate Reason For A Upgrade To TECH IV L.L. Per Article 13; Section 2; Paragraph (b).
Article 13, Section 2(b) of the collective bargaining agreement provides as follows:
In the event the Company establishes a new job, substantially changes the duties of an existing job or combines on or more jobs, it shall place into effect what it considers the appropriate rate of the new or substantially changed job, and notify the Union in writing of the change and the new rate. After the job has been in effect for thirty (30) calendar days, the Union shall have the right to request a conference to discuss with the Company the rate of pay assigned to the job, but such conference must be requested prior to forty-five (45) days after the job has been in effect. Should the parties agree on the new rate of pay, the rate of pay shall be effective as of the date of the establishment of the job by the Company. In the event the Union and the company cannot agree on the rate of pay for the job, the Union may, within ten (10) working days from the last conference on the subject with the Company, submit the question of the appropriate rate of pay for the job to arbitration in accordance with Article 8 of this Agreement. Any higher rate resulting from the arbitration shall be placed into effect as of the date of the job and rate of pay were established by the Company. In deciding the proper rate for the job, the arbitrator shall be confined to setting a rate in accordance with the rates paid the more nearly comparable jobs in the Plant.
Dial responded to the Shipping Clerks' grievance on October 25, 1999, denying their request. On December 28, 1999, Dial reiterated its decision that a Tech IV pay rate was not the appropriate pay rate for the Shipping Clerks. In accordance with Articles 7 and 8 of the collective bargaining agreement, the Union submitted the dispute to arbitration.
On July 12, 2000, Arbitrator Charles J. Marino ("the arbitrator") presided over an arbitration hearing between the parties. The parties then submitted their respective briefs to the arbitrator to assist him in *1167 his decision. On September 11, 2000, the arbitrator issued his Opinion and Award. The arbitrator framed the issue as follows: "Have the shipping clerks' duties substantially changed requiring the Employer to establish an appropriate rate of pay pursuant to Article 13, Section 2(b) of the collective bargaining agreement?" The arbitrator found that the Shipping Clerks' rate of pay should be increased to that of a Class IV position. The arbitrator stated:
The Arbitrator has seen the new operation called `Oracle,' described above, and both the company and the Union have provided the needed evidence to convince the Arbitrator that both of the Parties are, in reality, agreeing that the job changed pursuant to Article 13, Sec. 2(b) and, therefore, a new rate must be established.
* * * * * *
The Arbitrator is confined to setting this rate in accordance with the rates paid the more nearly comparable job in the Plant.
Dial filed its complaint under the Labor Management Relations Act ("LMRA"), 29 U.S.C. § 185, the Federal Arbitration Act, 9 U.S.C. § 1, and the Declaratory Judgment Act, 28 U.S.C. § 2201. The Union brought its counter claim under the LMRA and the National Labor Relations Act, 29 U.S.C. § 2.
The Union first moved for summary judgment arguing that as a matter of law the arbitration award must be upheld and enforced. Dial then moved for summary judgment arguing that as a matter of law the arbitration award must be vacated because the arbitrator's finding was not drawn from the essence of the collective bargaining agreement. Dial asserts that the parties agree that this case presents no genuine issue of fact, but involves questions of law and the application of settled legal principles.

II. Discussion

A. Standard of Review
When considering a motion for summary judgment, the Court must determine whether the record, when viewed in the light most favorable to the non-moving party, shows any genuine issue of material fact. Fed.R.Civ.P. 56(c). See generally, Celotex Corp. v. Catrett, 477 U.S. 317, 322-23, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986); Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 249-50, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986). A party seeking summary judgment bears the initial burden of informing the court of the basis for its motion and identifying those portions of the record, which it believes demonstrate the absence of a genuine issue of material fact. Celotex, 477 U.S. at 323, 106 S.Ct. 2548. There is, however, no express or implied requirement in Rule 56 that the moving party must support its motion with affidavits or other materials negating the opponent's claim. Id. The burden is not on the moving party to produce evidence showing the absence of a genuine issue of material fact, even with respect to an issue on which the nonmoving party bears the burden of proof. Id. at 325, 106 S.Ct. 2548. Instead, "the burden on the moving party may be discharged by `showing'that is, pointing out to the district courtthat there is an absence of evidence to support the non-moving party's case." Id. As long as the record before the court demonstrates that there is no genuine issue of material fact, summary judgment should be granted. Id. at 323, 106 S.Ct. 2548.
When faced with a motion for summary judgment meeting the standard set forth above, the non-moving party may not rest upon the mere allegations or denials of its pleadings alone, but must introduce affidavits, depositions, answers to interrogatories, *1168 or admissions on file designating specific facts showing that there is a genuine issue of material fact for trial. Celotex, 477 U.S. at 324, 106 S.Ct. 2548; Jetton v. McDonnell Douglas, Corp., 121 F.3d 423, 427 (8th Cir.1997); Noll v. Petrovsky, 828 F.2d 461, 462 (8th Cir.1987). Further, a plaintiff facing a motion for summary judgment must designate specific facts showing a genuine issue of material fact on each essential element of his claim. Id.

B. Analysis
In Homestake Mining Co. v. United Steelworkers of America, AFL-CIO, AFL-CIO-CLC, 153 F.3d 678, 680 (8th Cir.1998), the Eighth Circuit held:
`The scope of judicial review of arbitration awards under collective-bargaining agreements is extremely limited,' United Food and Commercial Workers v. Shop `N Save Warehouse Foods, Inc., 113 F.3d 893, 894 (8th Cir.1997), and we will not `reconsider the merits or an award even though the parties may allege that the award rests on error of fact or on misinterpretation of the contract.' United Paperworkers Int'l Union v. Misco, Inc., 484 U.S. 29, 36, 108 S.Ct. 364, 98 L.Ed.2d 286 (1987). In other words, we `do not sit to hear claims of factual or legal error by an arbitrator as an appellate court does in reviewing decision of lower courts.' Id. at 38, 108 S.Ct. 364.
An arbitrator's award must be enforced `as long as he is arguably construing or applying the [collective bargaining agreement]' rather than `dispensing his own brand of industrial justice.' Midwest Coca-Cola Bottling Co. v. Allied Sales Drivers, Local 792, 89 F.3d 514, 517 (8th Cir.1996).
An arbitrator's award is legitimate as long as it draws its essence from the collective bargaining agreement. Int'l Paper Co. v. United Paperworkers Int'l Union, 215 F.3d 815, 817 (8th Cir.2000) (citing Alvey, Inc. v. Teamsters Local Union No. 688, 132 F.3d 1209, 1211 (8th Cir.1997)). "In deciding whether an award draws its essence from the agreement, we must decide whether the award is simply a mistaken interpretation of the contract that we must uphold, or whether it violates the fundamental principle that `an arbitrator is confined to interpretation and application of the collective bargaining agreement; he does not sit to dispense his own brand of industrial justice.'" Id. (quoting United Steelworkers v. Enterprise Wheel and Car Corp., 363 U.S. 593, 597, 80 S.Ct. 1358, 4 L.Ed.2d 1424 (1960)). An arbitrator may look outside the collective bargaining agreement to assist in the interpretation of the agreement, but he must construe the collective bargaining agreement without amending it. Id. (citing Keebler Co. v. Milk Drivers and Dairy Employees Union, 80 F.3d 284, 288 (8th Cir.1996)) (the arbitrator may also look to past prevailing practices in the company plant). Where an arbitrator does not draw his conclusion from the essence of the collective bargaining agreement or ignores the plain language of the agreement, a reviewing court may vacate the arbitration award. Keebler, 80 F.3d at 287 (citing Iowa Mold Tooling Co., Inc. v. Teamsters Local Union No. 828, 16 F.3d 311, 312 (8th Cir.1994)).
The United States Supreme Court stated in United Steelworkers of America v. Enterprise Wheel and Car Corp., 363 U.S. 593, 598, 80 S.Ct. 1358, 4 L.Ed.2d 1424 (1960):
A mere ambiguity in the opinion accompanying an award, which permits the inference that the arbitrator may have exceeded his authority, is not a reason for refusing to enforce the award. Arbitrators have no obligation to the court to *1169 give their reasons for an award. To require opinions free of ambiguity may lead arbitrators to play it safe by writing no supporting opinions. This would be undesirable for a well-reasoned opinion tends to engender confidence in the integrity of the process and aids in clarifying the underlying agreement. Moreover, we see no reason to assume that this arbitrator has abused the trust the parties confided in him and has not stayed within the areas marked out for his consideration.
A court is required to enforce an arbitrator's award even if the court believes the arbitrator committed serious error. Midwest Coca-Cola Bottling Co. v. Allied Sales Drivers, Local 792, 89 F.3d 514, 517 (8th Cir.1996). As long as the arbitrator arguably construes or applies the collective bargaining agreement, acting within the scope of his authority, and drawing his conclusion from the essence of the agreement, his award is legitimate. Id. (the arbitrator may not "dispense his own brand of industrial justice").
Dial argues that the arbitrator ignored the clear language of the collective bargaining agreement. Dial points out that Article 13, section 2(b) requires the arbitrator to first determine whether the change in the job is substantial. After making such a finding, the arbitrator is required to compare the substantially changed job to "more nearly comparable jobs in the Plant" in order to decide the proper rate for the job. Dial claims that the arbitrator completely ignored the second step in the process to determine whether the Shipping Clerks' rate of pay should be increased. Dial claims that neither party presented any evidence at the hearing regarding Class IV job duties. Dial also claims that the parties agreed that the Shipping Clerks' position was not comparable to any Class IV position. The Union disputes these allegations.
The arbitrator quoted the clause in the collective bargaining agreement setting out the requirements for his determination. He framed the issue as follows: "Have the shipping clerks' duties substantially changed requiring the Employer to establish an appropriate rate of pay pursuant to Article 13, Section 2(b) of the collective bargaining agreement?" The arbitrator clearly determined that a substantial change had been made in the Shipping Clerks' responsibilities. He defined the word "substantial" as found in Black's Law Dictionary and noted that Dial had even admitted that a substantial change had been made in the Shipping Clerks' job.
The arbitrator was aware that he was "confined to setting this rate in accordance with the rates paid the more nearly comparable job in the Plant", since he made this very statement in his opinion. Dial's concern is that the arbitrator did not mention any other Class IV positions nor explain how they are comparable to the Shipping Clerks' duties. Dial points out numerous differences and argues that the arbitrator completely ignored this provision of the collective bargaining agreement.
The Union argues that the arbitrator was aware of this requirement and fulfilled his duty to compare the Shipping Clerks' job to other jobs in the Plant. The Union claims that the arbitrator performed physical inspections of areas of the plant in fulfilling this obligation and that he specifically inspected those areas requested by each party. Dial disputes this statement by arguing that no evidence regarding the job duties of Class IV positions was presented to the arbitrator. However, Dial submitted a brief to the arbitrator following the hearing which clearly describes Class IV positions in detail.
*1170 Further, the Union points out that Article 8, section 2 of the collective bargaining agreement provides: "The decision of the Arbitrator shall be final and binding upon the parties hereto."[1]
The Court finds that the parties agreed to the language and terms of the collective bargaining agreement and are bound by them. See Excel Corp. v. United Food and Commercial Workers Int'l Union, Local 431, 102 F.3d 1464, 1468 (8th Cir.1996). The parties agreed to arbitrate and agreed that the decision of the arbitrator would be final and binding. The collective bargaining agreement unambiguously gives the arbitrator the authority to determine whether a particular plant position should be entitled to an upgrade based on two factors: (1) whether Dial substantially changed the duties of an existing job and (2) if so, the arbitrator may set the pay rate in accordance with the rates paid the more nearly comparable jobs in the plant. Although Dial argues that the arbitrator ignored the second factor, the arbitrator clearly noted in his Opinion and Award that he was confined by the rates paid the more nearly comparable jobs in the plant. Merely because he did not list the comparable jobs in the plant does not infer that his decision was not drawn from the essence of the contract.
An ambiguity in the award is not reason to vacate the award. See United Steelworkers of America v. Enterprise Wheel and Car Corp., 363 U.S. 593, 598, 80 S.Ct. 1358, 4 L.Ed.2d 1424 (1960). Although preferable, an arbitrator is not required to give his reasons for an award. Id. In this case, the arbitrator did give many reasons for his award. He also recognized that he was confined by the comparable rates of pay with regard to other Class IV positions. Although the arbitrator did not specify which Class IV positions to which he compared the Shipping Clerks, the record shows that the parties' briefs submitted to the arbitrator following the hearing informed the arbitrator of the various responsibilities of the Shipping Clerks and Class IV positions.
As a matter of law, the Court finds the arbitrator drew his conclusion from the essence of the collective bargaining agreement. Moreover, even if the Court were to disagree with the finding of the arbitrator, the Court is not entitled to vacate the arbitrator's award on that ground. See Midwest Coca-Cola Bottling Co., 89 F.3d at 517.
In addition, Dial claims that changing the Shipping Clerk position to a Class IV position rather than a Tech IV position was even beyond what the Shipping Clerks requested. The Shipping Clerks' grievance merely requested an upgrade to a Tech IV position. Dial points out that Class IV positions require more independent decision making, higher educational requirements, certification and more responsibility than the Shipping Clerk position demands. Tech IV positions require an interested individual to bid on the job and pass a validated assessment test showing that the individual has the necessary skills and aptitude to perform the job. Dial contends that the Shipping Clerks were only required to send one employee from their department to a one-day training session. That individual, in turn, trained the others in the department. Dial argues this training does not *1171 meet the requirements necessary to upgrade to a Tech IV or Class IV position.
The Union claims that the parties commonly use the "Tech IV" and "Class IV" terminology interchangeably. The Union notes that in Dial's letter denying the requested upgrade, the author of the letter referred to the upgrade as a Class IV position in her explanation. The Union also notes that the Tech IV position is at the same pay rate as other Class IV positions. The Union argues that the increased level of responsibility given to the Shipping Clerks justifies an upgrade to a Tech IV position.
The Court finds that the meaning of the terms "Tech IV" and "Class IV" do not create a genuine issue of material fact required to defeat summary judgment. The rate of pay is identical and the Court finds little difference in the descriptions provided for either classification. The arbitration award will not be vacated on this ground.

III. Conclusion
Both parties in this case filed motions for summary judgment. Dial has maintained throughout that this case is ripe for summary judgment. The Court agrees that no genuine issue of material fact exists. Dial, however, has failed to show that the arbitrator ignored an essential term of the collective bargaining agreement so that the award should be vacated. Therefore, Dial is not entitled to a declaratory judgment vacating the arbitration award as a matter of law. The Union, however, is entitled to judgment as a matter of law on its counter-claim for enforcement of the arbitration award. The Court finds that the arbitration award was drawn from the essence of the collective bargaining agreement. As a result, Dial is required to comply with the terms of the arbitrator's award.
Accordingly,
IT IS HEREBY ORDERED that Defendant Automotive, Petroleum and Allied Industries Employees Union, Local 618, affiliated with the International Brotherhood of Teamsters, AFL-CIO Motion for Summary Judgment [# 20] is GRANTED.
IT IS FURTHER ORDERED that Plaintiff The Dial Corporation's Motion for Summary Judgment [# 21] is DENIED.
IT IS FURTHER ORDERED that the parties shall file briefs with regard to damages, if any, to be awarded no later than August 6, 2001.
NOTES
[1] That section continues: "The Arbitrator shall only have jurisdiction to decide grievances involving the meaning, interpretation or application of the provisions of this Agreement and shall not have authority or jurisdiction to in any way change, modify, extend or suspend any of the provisions of this Agreement."