WOLLMAN, Chief Judge.
Soo Line Railroad Company (Soo Line) appeals from the district court’s order vacating in part an arbitration award entered by National Railroad Adjustment Board (Board). We reverse.
I.
Soo Line operates a rail system under the Interstate Commerce Act and constitutes a “carrier” within the meaning of § 1 of the Railway Labor Act, 45 U.S.C. § 151 First. Its track workers are represented by the Brotherhood of Maintenance of Way Employees (BMWE or union). As the result of a 1985 merger between Soo Line and the Milwaukee Railroad, relations between Soo Line and BMWE are governed by one of two collective bargaining agreements. Union members working at properties originally owned by Soo Line work under the “Soo-side” agreement and employees at former Milwaukee Railroad properties work under the “Milwaukee-side” agreement. The parties stipulate that this dispute is governed by the Milwaukee-side agreement.
In February of 1993, Soo Line assigned certain painting projects at its St. Paul Roundhouse to members of the Brotherhood of Railway Carmen. On March 16, 1993, BMWE filed a claim with Soo Line (original claim), asserting that pursuant to *909 the Milwaukee-side agreement the painting work should have been assigned to BMWE employees and claiming compensation for 96 straight time and 202 overtime hours. On March 20, 1993, BMWE filed a supplemental claim with Soo Line, claiming that BMWE workers were entitled to compensation for an additional 92 straight time and 96 overtime hours of painting work. Soo Line denied both the original and the supplemental claims on May 24, 1993.
The dispute was then submitted for arbitration before the National Railroad Adjustment Board (Board). In Award No. 32422, dated January 21, 1998, the Board ruled that Soo Line was procedurally barred from disputing the union’s original claim because it had failed to contest it within sixty days as required by the Milwaukee-side agreement. The Board accordingly ordered Soo Line to compensate the union for the hours specified in the original claim. The Board addressed the merits of the supplemental claim, however, and determined, in relevant part, (1) that the so-called “Scope Rule” in the Milwaukee-side agreement did not explicitly limit painting to BMWE members; (2) that the union therefore bore the burden of demonstrating that painting at the St. Paul Roundhouse was historically performed by BMWE members; and (3) that the union failed to satisfy this burden. The Board therefore rejected the supplemental claim for compensation.
BMWE subsequently filed a petition in federal district court, challenging the Board’s arbitration award to the extent that it rejected the union’s supplemental claim. Although the court acknowledged that it owed the Board’s decision extraordinary deference, it concluded that the Board had exceeded its jurisdiction by citing “industry practice, custom, and usage involving the Soo-side Agreement” and failing “to draw its essence” from the Milwaukee-side agreement. The court accordingly vacated the relevant portion of the award and remanded for further findings by the Board regarding the past practice of the parties under the Milwaukee-side agreement.
II.
We review the court’s findings of law de novo and its factual findings on a clearly erroneous standard. Excel Corp. v. United Food & Commer. Workers Int’l Union, 102 F.3d 1464, 1467 (8th Cir.1996). We therefore owe no special deference to the district court’s decision to vacate the Board’s award. Bureau of Engraving v. Graphic Comm. Int’l Union, 164 F.3d 427, 429 (8th Cir.1999).
The Supreme Court has recently reminded us once again about the narrow scope of judicial review of a labor-arbitration decision: “Judicial review of a labor-arbitration decision ... is very limited. Courts are not authorized to review the arbitrator’s decision on the merits despite allegations that the decision rests on factual errors or misinterprets the parties’ agreement.” Major League Baseball Players Ass’n v. Garvey, 532 U.S. 504, 121 S.Ct. 1724, 1728, 149 L.Ed.2d 740 (2001). See also Duluth, Missabe & Iron Range Ry. Co., Inc., v. Int’l Bhd. of Locomotive Eng’rs, 264 F.3d 782 (8th Cir.2001).
Our review of the Board’s decision is “among the narrowest known to the law.” Int’l Ass’n of Machinists and Aerospace Workers v. Northwest Airlines, (Aerospace Workers), 858 F.2d 427, 429 (8th Cir.1988). An arbitration award may be set aside on three grounds only: (1) the Board’s failure to comply with the provisions of the Railway Labor Act; (2) failure of the order to confine itself to matters within the scope of its jurisdiction; or (3) fraud or corruption. See id.; 45 U.S.C. *910 § 153 First (q). An arbitrator’s task is to interpret and apply the relevant collective bargaining agreement. Alvey, Inc. v. Teamsters Local Union No. 688, 132 F.3d 1209, 1213 (8th Cir.1997). As long as the arbitrator is arguably construing or applying the contract and acting within the scope of his authority, that a court is convinced he committed serious error does not suffice to overturn his decision. Keebler Co. v. Milk Drivers and Dairy Emp. Union, 80 F.3d 284, 287 (8th Cir.1996) (citation omitted). Furthermore, “[a] mere ambiguity in the opinion accompanying an award, which permits the inference that the arbitrator may have exceeded his authority, is not a reason for refusing to enforce the award.” United Steelworkers of Am. v. Enter. Wheel & Car Corp., 363 U.S. 593, 598, 80 S.Ct. 1358, 4 L.Ed.2d 1424 (1960). Stated otherwise, as long as the arbitrator’s award draws its essence from the collective bargaining agreement, and is not merely a brand of industrial justice, the award is legitimate. United Paperworkers Int’l v. Misco, Inc., 484 U.S. 29, 38, 108 S.Ct. 364, 98 L.Ed.2d 286 (1987) (citation omitted).
Although the parties agree that the Milwaukee-side agreement controls this case, the Board’s award cited two prior awards that involved the application and interpretation of the Soo-side collective bargaining agreement. The relevant portion of the Board’s decision reads:
The Organization [BMWE] has not carried its burden on the supplemented allegations found in the March 30, 1993 letter. The Scope Rule does not reserve painting work exclusively to the Organizations’s members and the record does not establish that the Organization’s members have historically performed this type of work. See Third Division Award 27880 between the parties (“Without an express reservation of work guaranteed to them by contract, the Organization was obligated to show that its members have historically performed the work”). On the contrary, the Carrier has shown that its Carmen have performed similar painting. Third Division Award 27762 between the parties and Awards cited therein (Carmen painting portions of buildings at different locations).
It is well established that an arbitrator may look to outside sources to aid in interpreting a collective bargaining agreement, Alvey, 132 F.3d at 1213. Accordingly, the Board’s citation of these awards is not, in itself, problematic. The question, rather, is whether the citation of these two awards indicates that Board’s decision improperly draws its essence from the Soo-side collective bargaining agreement. Id. When viewed in the light of our deferential standard of review, we conclude that it does not.
We turn first to Award 27880, which the Board cited solely for the proposition that the union bore the burden of establishing the prior practice of the parties at the St. Paul Roundhouse. Although Award 27880 involved application of the Soo-side agreement, we conclude that the citation of the award for this limited purpose does not indicate that the Board’s award draws its essence from an inapplicable collective bargaining agreement. BMWE does not argue that the burden of proof was improperly applied by the Board, nor does the union contend that the Milwaukee-side agreement mandates the application of a different burden of proof rule. Furthermore, we observe that “[u]n-less there is specific controlling language in the collective bargaining agreement ... an arbitrator’s decision allocating the burden of proof among the parties ... ordinarily cannot be reviewed in federal court.” Alvey, 132 F.3d at 1212. Accord *911 ingly, we conclude that the citation of Award 27880 does not implicate jurisdictional issues.
We next address the Board’s citation of Award 27762, keeping in mind that “[a] mere ambiguity in the opinion accompanying an award, which permits the inference that the arbitrator may have exceeded his authority, is not a reason for refusing to enforce the award.” United Steelworkers, 363 U.S. at 598, 80 S.Ct. 1358. The Board cited Award 27762 for the proposition that “the Carrier has shown that its Carmen have performed similar painting,” and identified the award as being “between the parties.” BMWE argues that Award 27762 was not “between the parties” because it involved a distinct bargaining unit under the Soo-side agreement, rather than the bargaining unit governed by the Milwaukee-side agreement. Further, BMWE argues that the Board’s determination that the union failed to carry its burden with regard to the historical practice at the St. Paul Roundhouse was based on its erroneous belief that Award 27762 demonstrated that Carmen had routinely done painting work under the Milwaukee-side agreement. We disagree.
Even assuming, arguendo, that the Board erred in characterizing Award 27762 as “between the parties” and erroneously believed that the award involved the Milwaukee-side agreement, it is unclear whether these errors affected the Board’s antecedent conclusion that “the record does not establish that the Organization’s members have historically performed this type of [painting] work.” To the contrary, the specificity of this statement indicates that the Board thoroughly examined the record and concluded that BMWE had failed to satisfy its burden of proof regarding the historical practice of the parties under the Milwaukee-side agreement. Furthermore, in light of its conclusion that the record did not support the union’s claim that painting work was traditionally limited to its members, and in light of the undisputed fact that the Milwaukee-side agreement did not specifically limit painting to BMWE members, the Board was permitted to “consider the scope of other related collective bargaining agreements, as well as the practice, usage and custom pertaining to all such agreements.” Transportation-Communication Employees Union v. Union Pac. R. Co., 385 U.S. 157, 161, 87 S.Ct. 369, 17 L.Ed.2d 264 (1966). “This is particularly true when the agreement is resorted to for the purpose of settling a jurisdictional dispute over work assignments.” Id.
In sum, although it is possible that the Board relied on an inapplicable collective bargaining agreement, to find that it did so would require speculation on our part. It is, at the very least, equally likely that the Board reviewed the record and concluded that the union failed to satisfy its burden of proof, and that this decision was unaffected by any alleged errors related to its interpretation of Award 27762. Where such ambiguity exists, we are obligated to grant the Board’s decision the benefit of the doubt and conclude that jurisdiction was properly exercised. Steelworkers, 363 U.S. at 598, 80 S.Ct. 1358.
BMWE contends that it conclusively demonstrated that painting work was traditionally reserved to BMWE members under the Milwaukee-side agreement and that the Board therefore erred when it concluded that it had failed to satisfy its burden of proof. These arguments fundamentally misapprehend the scope of our inquiry, however, for our task on appeal is decidedly not to review the merits of the Board’s award. Aerospace Workers, 858 F.2d at 430. Even if we were convinced that the Board committed serious error in *912 its analysis of the historical practice of the parties with regard to the assignment of painting work, we would not be justified in overturning its decision. United Paper-workers, 484 U.S. at 38, 108 S.Ct. 364.
Finally, the cases cited by BMWE in support of the district court’s decision to vacate the Board’s award are distinguishable. In Keebler, 80 F.3d at 288-89, we vacated an arbitrator’s award because the arbitrator expressly relied on language that had been deliberately rejected by the parties during contract negotiations. In this case, it is undisputed that the Milwaukee-side agreement does not explicitly limit painting to BMWE members, and thus the Board’s decision does not directly conflict with the controlling collective bargaining agreement. Similarly, in Alvey, 132 F.3d at 1213, we reversed the district court’s decision to enforce an arbitrator’s award because the record reflected that the arbitrator “effectively wrote a relevant work rule out of the agreement by looking exclusively at an inconclusive outside source.” No such error occurred here. Finally, the union relies on Bureau of Engraving, 164 F.3d at 429 (8th Cir.1999), in which we ordered the district court to vacate an award because the arbitrator had failed to consider the intent of the parties in its analysis. Here, the Board award indicates that it thoroughly reviewed the evidence of past practice and concluded that the union had failed to meet its burden of proof. Although the parties disagree about the merits of the Board’s decision, that issue is beyond the scope of our review.
The judgment is reversed, and the case is remanded to the district court with directions to reinstate the Board’s award and to dismiss the petition.