INTERNATIONAL ASSOCIATION OF BRIDGE, STRUCTURAL, ORNAMENTAL, AND REINFORCING IRONWORKERS, SHOPMAN'S LOCAL 493, Plaintiff,

v.

EFCO CORPORATION AND CONSTRUCTION PRODUCTS, INC., Defendant.

No. 4:02–CV–40490.

United States District Court, S.D. Iowa, Central Division.

Feb. 5, 2003.

Mark T. Hedberg, Hedberg Owens & Hedberg, Des Moines, IA, for Plaintiff.

Hugh J. Cain, Hopkins & Huebner, Des Moines, IA, for Defendant.

## ORDER ON CROSS MOTIONS FOR SUMMARY JUDGMENT

GRITZNER, District Judge.

Before the Court is Defendant's Motion for Summary Judgment and Plaintiff's Cross–Motion for Summary Judgment. For the reasons discussed herein, Defendant's Motion for Summary Judgment is **granted**, and Plaintiff's Cross–Motion for Summary Judgment is **denied**.

### FACTUAL BACKGROUND

Defendant Construction Products, Incorporated ("CPI"),[1] and Plaintiff, International Association of Bridge, Structural, Ornamental, and Reinforcing Ironworkers, Shopman's Local 493 ("Union"), are parties to a collective bargaining agreement ("CBA"). The CBA contains a grievance procedure involving several steps, with each step having certain time limits. Whenever a grievance arises between CPI and a Union-member employee, such grievance must be reduced to writing, signed by the complaining employee, and presented to the shop steward (a Union representative) within five regular working days from the date the grievance or dispute occurs.

Within one work day, the shop steward must present the grievance to the employee's supervisor. Step 1 requires the supervisor to respond within three regular work days. If the decision is not satisfactory, the shop steward shall notify the supervisor in writing within three regular work days, and the grievance then proceeds to Step 2.

---

1. EFCO is the parent company of CPI.

At Step 2, CPI must render its decision within three regular work days. If the decision is not satisfactory to the shop committee, the chief shop steward shall notify CPI within three regular work days, and the grievance proceeds to Step 3.

At Step 3, the chief executive of CPI, or his designated representative, shall render a decision in writing within three regular work days following the day on which the grievance or dispute is presented to him. If this written decision is not satisfactory, the grievance shall, upon the *written request* of CPI or the Union, be submitted to arbitration in accordance with the arbitration provisions in the CBA, provided that such request is made within 15 regular work days after the three regular work day period of consideration provided for in Step 3. In this case, the dispute arose when the Union, although having agreed it would, did not follow the precise written procedure contained in "Step 3" of the grievance procedure found in the CBA.

Specifically, on March 22, 2002, a Union member/employee of CPI was discharged after alcohol was detected on his breath. The Union formally grieved this discharge on April 3, 2002, and successfully proceeded through Step 1 of the grievance process.

During Step 2 of the grievance process, a meeting occurred between CPI and the Union on April 10, 2002, after which the Union expressed a desire to expedite the grievance. Rather than wait until the next shop meeting, Union steward Shawn Morgan presented the grievance to CPI on April 15, 2002, appealing to Step 3.

The purpose of expediting the grievance, from the Union's perspective, was to allow the Union Executive Board, who were to meet during the evening of April 15, 2002, to grant authority to go forward with arbitration on this grievance. On the same day the Union appealed to Step 3 (April 15, 2002), CPI issued its Step 3 decision, wherein CPI maintained its original position that no contract violation had occurred when it discharged the employee.

After learning of CPI's position at Step 3, the Union *verbally* told CPI of its intent to arbitrate. On April 24, 2002, within the 15–day notification period allowed for in Step 3 of the grievance process, Dennis Benton, the Union Business Agent (authorized to manage day-to-day operations of the Union and possessing Union authority to inform CPI of the Union's intent to arbitrate a grievance), again *verbally* notified CPI of the Union's intention to arbitrate the employee discharge.

Almost five months later, on September 16, 2002, counsel for the Union requested that CPI reconsider its position of refusing to arbitrate the discharge of the employee. On September 18, 2002, CPI indicated it would not reconsider its position, would not arbitrate the matter, and did not even consider the matter to be an active grievance any longer. Seeking to compel CPI to arbitrate the employee discharge, the Union filed this lawsuit in federal court on September 20, 2002.[2]

The CBA at issue in this case contains an arbitration agreement which reads:

Any grievance or dispute between the Company and the Union or between the Company and an employee(s) that has been *processed in accordance with the provisions of the preceding section of this agreement* but not satisfactorily settled shall, upon the *written request* of

**2.** Section 301(a) of the Labor Management Relations Act of 1947, as amended, 29 U.S.C. § 185(a), provides: "Suits for violation of contracts between and employer and a labor organization representing employees in an industry affecting commerce as defined in this Act, or between any such labor organizations, may be brought in any district court of the United States having jurisdiction of the parties...".

either party to this agreement, be submitted to arbitration by an impartial arbitrator to be selected by mutual agreement of the parties. If within five (5) regular working days after receipt of *such written request* . . . .

*See* Defendant's App. at p. 65 (emphasis added). The "preceding section of the agreement", italicized above, is that part of the CBA "Step 3" grievance procedure requiring timely, written notification of an intent to arbitrate a grievance.

### APPLICABLE LAW

That the collective bargaining agreement contains an arbitration clause at all is significant because

> where the contract contains an arbitration clause, there is a presumption of arbitrability in the sense that '[an] order to arbitrate the particular grievance should not be denied unless it may be said with positive assurance that the arbitration clause is not susceptible of an interpretation that covers the asserted dispute. Doubts should be resolved in favor of coverage . . . [s]uch a presumption is particularly applicable where the [arbitration] clause is [broad]'.

*See AT & T Technologies, Inc. v. Communications Workers*, 475 U.S. 643, 650, 106 S.Ct. 1415, 89 L.Ed.2d 648 (1986) (quoting *Steelworkers v. Warrior & Gulf Nav. Co.*, 363 U.S. 574, 582–83, 80 S.Ct. 1347, 4 L.Ed.2d 1409 (1960)). Although there is a "liberal federal policy favoring arbitration agreements . . .", *see Moses H. Cone Memorial Hospital v. Mercury Constr. Corp.*, 460 U.S. 1, 24, 103 S.Ct. 927, 74 L.Ed.2d 765 (1983), the Supreme Court has indicated an exception exists because "whether or not a company is bound to arbitrate, as well as what issues it must arbitrate, is a matter to be determined by the court, and a party cannot be forced to 'arbitrate the arbitrability question' ". *See Litton Fin. Printing Div. v. NLRB*, 501 U.S. 190, 208, 111 S.Ct. 2215, 115 L.Ed.2d 177 (1991)

(quoting *AT & T*, 475 U.S. at 651, 106 S.Ct. 1415).

### A. *Procedural vs. Substantive Arbitrability.*

"Courts have attempted to distinguish between substantive and procedural arbitrability in the determination of whether the parties to a collective bargaining agreement have excluded certain issues from the arbitration procedure." *Automotive, Petroleum, and Allied Indust. Employees Union, Local No. 618 v. Town and Country Ford, Inc.*, 709 F.2d 509, 510 (8th Cir.1983). "[P]rocedural arbitrability encompasses the question of whether a grievance procedure applies to a particular dispute and whether the parties have followed or excused the particular procedure." *See id.* at 510–11 (quoting district court opinion) (citations omitted). "[G]enerally, the arbitrator is called upon to decide questions of procedural arbitrability." *Id.*

On the other hand, "[s]ubstantive arbitrability is concerned with the question of whether the parties have contractually agreed to submit the issue to arbitration". *See id.* at 510 (quoting district court opinion) (citations omitted). This results from the Supreme Court's instruction that "arbitration is a matter of contract and a party cannot be required to submit to arbitration any dispute which he has not agreed so to submit". *Howsam v. Dean Witter Reynolds, Inc.*, —— U.S. ——, 123 S.Ct. 588, 591, 154 L.Ed.2d 491 (2002) (quoting *Warrior & Gulf*, 363 U.S. at 582, 80 S.Ct. 1347).

### B. *The Parties' Respective Positions.*

In this case, the Union argues the subject matter of the dispute is the discharge of the employee. The essence of the Union's argument is that CPI and the Union, as evidenced by the CBA, clearly agreed to arbitrate this type of dispute. Therefore, procedural questions growing out of the

dispute and bearing on the dispute's final disposition are presumptively *not* for the judge, but for the arbitrator to decide. *See Howsam*, — U.S. at ——, 123 S.Ct. at 592 (citing *John Wiley & Sons, Inc. v. Livingston*, 376 U.S. 543, 557, 84 S.Ct. 909, 11 L.Ed.2d 898 (1964)) (emphasis in original); *see also United Rubber, Cork, Linoleum, and Plastic Workers of America AFL–CIO CLU Local 164 v. Pirelli Armstrong Corp.*, 104 F.3d 181, 183 (8th Cir. 1997) (discussing that Chief Judge Longstaff was correct in recognizing that summary judgment could not be granted on the basis of procedural limitations provided in the collective bargaining agreement since that was reserved for the arbitrator and not the court); *Town and Country Ford, Inc.*, 709 F.2d at 512–14 (pointing out that the issue of whether or not the Union met the time line for instituting arbitration was a matter of procedural arbitrability for the arbitrator to decide).

CPI argues the substantive issue of this dispute concerns the timeliness and form of the Union's notice of its intent to arbitrate the discharge of the employee, not the initial discharge of the employee. In support, CPI argues the arbitration clause clearly indicates an intent by the parties to limit the types of grievances that can be arbitrated. According to CPI, the parties mutually agreed that only those grievances processed according to the terms of the collective bargaining agreement (specifically the provision requiring timely, written notice) could be arbitrated.

The question of whether the parties have submitted a particular dispute to arbitration, i.e., the "question of arbitrability", is "an issue for judicial determination unless the parties clearly and unmistakably provide otherwise". *See Howsam*, — U.S. at ——, 123 S.Ct. at 591 (quoting *AT & T*, 475 U.S. at 649, 106 S.Ct. 1415). Although any potentially dispositive gateway question can be called a "question of

arbitrability", the phrase has a more limited scope. *See id.* at 592, 123 S.Ct. 588. The phrase is applicable in those narrow circumstances where:

> contracting parties would likely have expected a court to have decided the gateway matter, where they are not likely to have thought that they had agreed that an arbitrator would do so, and, consequently, where reference of the gateway dispute to the court avoids the risk of forcing parties to arbitrate a matter that they may well not have agreed to arbitrate.

*See id.*

According to CPI, the timeliness of the Union's notice is not a procedural matter arising out of the dispute, but, rather, is itself the dispute. Accordingly, any presumption of arbitrability that may exist has been overcome here, where it can be said with positive assurance that the arbitration clause is not susceptible to an interpretation that would cover the asserted dispute. *See Litton Financial*, 501 U.S. at 209, 111 S.Ct. 2215.

To some degree, the arbitration clause at issue in this case can be seen as "broad", as it pertains to "[a]ny grievance or dispute". A broad arbitration clause is known as a standard arbitration clause which essentially states that "all disputes" regarding the agreement are subject to arbitration. *See, e.g., AT & T*, 475 U.S. at 645 n. 1, 106 S.Ct. 1415 (pointing out "any differences arising with respect to the interpretation of this contract or … any obligation" [unless excluded] ); *see also Int'l Union of Operating Eng'rs, Local 150 v. Flair Builders, Inc.*, 406 U.S. 487, 488, 92 S.Ct. 1710, 32 L.Ed.2d 248 (1972) (finding the court reviewing a broad arbitration clause which stated that "any difference" between the parties would be subject to arbitration). Here, however, this "broad" arbitration clause has been modified and

somewhat limited (with the qualifier "processed in accordance with the provisions of the preceding section of this agreement ...").

The Court agrees with CPI that the subject matter of the dispute before this Court concerns the timeliness of the Union's notice of its intent to arbitrate, and, under these facts, this is a matter of substantive, not procedural, arbitrability. The Court believes the parties in this case, with the language used in the arbitration clause itself to qualify the matters that will be subject to arbitration, have manifested their intent to have the Court determine this issue.

With respect to this issue, it is clear that the Union, after having learned of CPI's Step 3 decision on April 15, 2002, did not, within 15 days, submit *written* notification of its intent to proceed to arbitration as required by the procedure at Step 3. There can be no doubt that the Union did not fully process this grievance according to the procedure in Step 3. Thus, the substantive arbitrability question this Court must decide is whether the Union and CPI agreed to arbitrate a grievance when said grievance has *not* been processed in accordance with the provision of the collective bargaining agreement that requires a timely written request for arbitration.[3]

The Union complains of an inconsistency, in that CPI has previously accepted verbal requests for arbitration. Thus, the

Union argues that custom and past practice becomes a part of, and is enforceable as a part of, a collective bargaining agreement. The Supreme Court has indicated that

The collective bargaining agreement states the rights and duties of the parties. It is more than a contract; it is a generalized code to govern a myriad of cases which the draftsmen cannot wholly anticipate.... The collective bargaining agreement covers the whole employment relationship. It calls into being a new common law—the common law of a particular industry or of a particular plant.... There are too many people, too many problems, too many unforeseeable contingencies to make the words of the contract the exclusive source of rights and duties. One cannot reduce all the rules governing a community like an industrial plant to fifteen or even fifty pages.... Gaps may be left to be filled in by reference to the practices of the particular industry and of the various shops covered by the agreement.... The labor arbitrator's source of law is not confined to the express provisions of the contract, as the industrial common law—the practices of the industry and the shop—is equally part of the collective bargaining agreement although not expressed in it.

See *Warrior & Gulf,* 363 U.S. at 578–82, 80 S.Ct. 1347. In this case, the Union avers

---

3. Determining that the issue before this Court is one of substantive arbitrability distinguishes this case from cases where various time lines were deemed to be procedural requirements. See, e.g., *Bevington & Basile Wholesalers, Inc. v. Local 46 Int'l Union of United Brewery, Flour, Cereal, Soft Drink & Distillery Workers,* 330 F.2d 202, 203 (8th Cir.1964) (passing on the issue of "whether the court or the arbitrator should determine whether the union has sufficiently complied with the *procedural requirements* of the collective bargaining agreement as to compel arbi-

tration") (emphasis added). To further distinguish *Bevington & Basile,* it should be pointed out that in *Bevington & Basile,* "there [was] no question about the breadth of the arbitration clause". See *Local 46 Int'l Union of United Brewery, Flour, Cereal, Soft Drink & Distillery Workers v. Bevington & Basile Wholesalers, Inc.,* 213 F.Supp. 437, 438 (W.D.Mo.1963). In the instant case, of course, as discussed, there is an issue as to the breadth of the arbitration clause; indeed, it is on this ground that the Court decides this case.

the past practice has been to allow these types of grievances to proceed to arbitration upon oral notification. The implication of the Union's argument being that, if past practices of the parties are considered, the Court would recognize the Union did give timely notice of its intent to arbitrate and would grant the Union's motion for summary judgment, ordering the parties on to arbitrate the discharge of the employee.

However, past practices and various other aspects of 'law of the shop' should only be considered when construing a part of the collective bargaining agreement that is ambiguous. *See Int'l Woodworkers of America, U.S. AFL–CIO, Local 5–15 v. Weyerhaeuser Co.,* 7 F.3d 133, 136 (8th Cir.1993) (indicating that "[u]nder the Steelworkers Trilogy, [ambiguity in the collective bargaining agreement] may only be properly resolved by considering the parties' bargaining history and past practices...."); *Int'l Union, United Automobile, Aerospace and Agricultural Implement Workers of America v. White Motor Corp.,* 505 F.2d 1193 (8th Cir.1974) (pointing to two ambiguities in the collective bargaining agreement, the Eight Circuit affirmed the arbitrator's action of resorting to evidence outside the collective bargaining agreement). The law in this Circuit recognizes that resorting to evidence of past practice when the terms of the collective bargaining agreement are clear results in contract modification, imposing new obligations on the parties. *See Keebler Co. v. Milk Drivers and Dairy Employees Union, Local No. 471,* 80 F.3d 284, 288 (8th Cir.1996).

Reviewing the CBA here, the Court finds the grievance clause and the "grievance steps" contained therein, as well as the arbitration clause, are not ambiguous. The clear and unambiguous language of the CBA indicates what procedure the Union must follow to file a grievance; unambiguously, the CBA lists time lines to follow at all stages of the "grievance" process. The arbitration clause unambiguously allows for the arbitration for any grievance or dispute that has been "processed in accordance with the provisions of the preceding section of this agreement"; the "preceding section of the agreement" requires *timely written* notification of an intent to arbitrate. Lastly, the arbitration clause itself indicates that arbitration is available *"upon the written request* of either party to this agreement". Therefore, while the inconsistent practices may create understandable frustration, as a legal matter this Court cannot resort to the parties' past practices or other general aspects of the 'law of the shop'; to do so would amend the collective bargaining agreement and impose new obligations on the parties. *See Keebler,* 80 F.3d at 288.

Here, the Union did not process this grievance according to the provisions of the CBA that required timely, written notification of its intent to arbitrate. This Court, therefore, cannot order CPI to arbitrate this discharge; to do so would both amend the collective bargaining agreement and require CPI to "submit to arbitration [a] dispute which [it] has not agreed so to submit". *Howsam,* —— U.S. at ——, 123 S.Ct. at 591.

Citing *Pirelli Armstrong Corp.,* the Union argues this Court cannot decide whether the grievance itself is time barred under the terms of the collective bargaining agreement. The Union's reliance on *Pirelli Armstrong Corp.* is misplaced, as the decision of this Court does no violence to the holding of *Pirelli Armstrong Corp.*

In this case, the Court simply decides that, based on the language of the arbitration clause, this is one of those narrow circumstances where the parties expected the Court to decide the matter. *See Howsam,* —— U.S. at ——, 123 S.Ct. at 592. Furthermore, this Court is satisfied, be-

yond positive assurance, that the arbitration clause is not susceptible to an interpretation covering this dispute. *See AT & T,* 475 U.S. at 650, 106 S.Ct. 1415 (citing *Warrior & Gulf,* 363 U.S. at 582–83, 80 S.Ct. 1347).

### C. *Standards for Summary Judgment.*

Federal Rule of Civil Procedure 56(c) provides that summary judgment is proper where "the pleadings, depositions, answer to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law". *See* Fed.R.Civ.P. 56(c). "Summary judgment is properly granted when the record", including pleadings, depositions, answers to interrogatories, and admissions on file, together with affidavits, if any, "viewed in the light most favorable to the nonmoving party and giving that party the benefit of all reasonable inferences, shows that there is no genuine issue of material fact, and the moving party is entitled to judgment as a matter of law." *Smithfield Foods, Inc. v. Miller,* 241 F.Supp.2d 978, ——, 2003 WL 152725, *4 (S.D.Iowa 2003) (citing Fed.R.Civ.P. 56(c)); *Walsh v. United States,* 31 F.3d 696, 698 (8th Cir.1994). "The moving party must establish its right to judgment with such clarity that there is no room for controversy." *See id.*

"Once the moving party has carried its burden, the nonmoving party must go beyond the pleadings and, by affidavits or by the depositions, answers to interrogatories, and admissions on file, designate specific facts showing that there is genuine issue for trial." *See id.* (citing Fed.R.Civ.P. 56(c) and (e)); *see also Celotex Corp. v. Catrett,* 477 U.S. 317, 322–23, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986); *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 257, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986).

" '[T]he mere existence of some alleged factual dispute between the parties will not defeat a motion for summary judgment; the requirement is that there be no genuine issue of material fact.' " *See id.* (quoting *Anderson,* 477 U.S. at 247–48, 106 S.Ct. 2505). "An issue is 'genuine,' if the evidence is sufficient to persuade a reasonable jury to return a verdict for the nonmoving party." *Id.* (citing *Anderson,* 477 U.S. at 248, 106 S.Ct. 2505). "As to materiality, the substantive law will identify which facts are material.... Factual disputes that are irrelevant or unnecessary will not be counted." *Id.* (citing *Anderson,* 477 U.S. at 248, 106 S.Ct. 2505).

### CONCLUSION

For the foregoing reasons, CPI's Motion for Summary Judgment is **granted**, and the Union's Cross–Motion for Summary Judgment is **denied**. This case is **dismissed**.

**IT IS SO ORDERED**.